IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNIVERSITY HOSPITALS HEALTH SYSTEM, INC.<br>11100 Euclid Avenue<br>Cleveland, OH 44106<br><br>and<br><br>GILBANE BUILDING COMPANY<br>1621 Euclid Avenue<br>Cleveland, Ohio 44115<br><br>      Plaintiffs,<br><br>v.<br><br>BUILDING & CONSTRUCTION LABORERS LOCAL UNION NO. 310<br>3250 Euclid Avenue<br>Cleveland, Ohio 44115<br><br>      Defendant. | CASE NO. _____<br><br>JUDGE _____ |

## COMPLAINT TO VACATE ARBITRATION AWARD

For their Complaint against Defendant Building & Construction Laborers Local Union No. 310 (hereinafter "Local 310"), Plaintiffs University Hospitals Health System, Inc. (hereinafter "UHHS") and Gilbane Building Company (hereinafter "Gilbane") (collectively referred to herein as "Plaintiffs") aver as follows:

### THE PARTIES

1.  UHHS is an Ohio not-for-profit corporation, which together with its affiliates and subsidiaries is an integrated health care delivery system that serves patients at more than 150 locations throughout Northeast Ohio.  Committed to advanced care, the System includes an academic medical center, six wholly-owned community medical

centers, multiple physician locations, and several construction sites.  UHHS's business address is 11100 Euclid Avenue, Cleveland, Ohio 44106, and its principal place of business is in Cleveland, Ohio.

2.  Gilbane is a Rhode Island for-profit corporation and is a leading construction management firm, providing a full slate of facilities-related services for clients in the healthcare, education, government, convention/cultural, mission-critical, corporate, sports/recreation, life sciences, transportation, and criminal justice markets. Gilbane's Ohio business address is 1621 Euclid Avenue, Cleveland, Ohio 44115.

3.  Local 310 is an affiliate member of Laborers' International Union of North America and is affiliated with the Cleveland North Shore Federation of Labor – AFL-CIO.  Local 310 supplies workers to signatory contractors in the Cuyahoga and Geauga Counties in a variety of trades in the construction industry, including carpenters, cement masons, bricklayers, plasterers, floor layers, operating engineers, and plumbers. Local 310's business address is 3250 Euclid Avenue, Cleveland, Ohio 44115, and its principal place of business is in Cleveland, Ohio.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction under federal law, including but not limited to 29 U.S.C. § 185, because the present action seeks to vacate an arbitrator's decision purportedly issued pursuant to a Project Labor Agreement ("PLA") between UHHS and the Cleveland Building and Construction Trades Council (the "Council").  A copy of the PLA is attached hereto as Exhibit A.

5. This Court has venue under 29 U.S.C. § 185(c) because Local 310 officers and/or agents represent their members within the Northern District of Ohio and because Local 310 has its principal office within this District.

## FACTS

6. Michael Harting ("Harting") was employed by Rivera Construction ("Rivera").

7. Harting is a member of Local 310 and his employment was governed by a collective bargaining agreement between Rivera, his employer, and Local 310.

8. Harting was a worker at UHHS' Rainbow Neonatal Intensive Care Unit construction project (the "NICU Project"), which is part of UHHS' larger construction project, Vision 2010.

9. Harting engaged in misconduct at the NICU Project that warranted his exclusion from UHHS property.

10. Specifically, Harting violated work rules and policies by entering certain areas of UHHS's property without permission, directing a racial slur at a UHHS employee in violation of UHHS's policies, defaming a UHHS employee, engaging in threatening conduct toward UHHS employees, and causing a disturbance on UHHS's property.

11. Harting has a history of threatening and abusive behavior.

12. At all times relevant to this Complaint, Harting was employed by Rivera. Harting is not now, nor has he ever been, an employee of UHHS.

3

13. If Harting and Local 310 believed that Harting's exclusion from the worksite was improper, they had grievance and arbitration procedures available to them under the collective bargaining agreement governing Harting's employment with Rivera.

14. Had Harting continued to work on the UHHS construction project, UHHS would not have been responsible for the payment of his wages.

15. Nonetheless, Local 310 seeks damages in the form of lost wages to be paid by UHHS to Harting.

16. On February 20, 2009 Local 310 filed a Demand for Arbitration (the "Demand") on behalf of Harting, which purported to arise out of the PLA between UHHS and the Council. See Demand, attached hereto as Exhibit B.

17. The PLA is an overarching agreement entered into to aid UHHS in meeting certain societal, diversity, and regionalism goals within the Northeastern Ohio area. The PLA practically serves the purpose of avoiding labor disputes between the Council and contractors on UHHS's various construction projects.

18. Neither Harting nor Local 310 are signatories to the PLA; rather, only UHHS and the Council are signatories to the PLA.

19. Paragraph 25 of the PLA is controlling with regard to the allegations contained in the Demand and states:

> 25. If a worker has any grievance about the terms and/or application of this Agreement which are not covered by other provisions of this Agreement relating to dispute resolution, then such dispute shall be handled under the procedures set forth in the applicable collective bargaining agreements.

4

20. Thus, in the PLA, the signatories to the PLA, UHHS and the Council, have agreed that if a worker has a grievance regarding the application of the PLA, that grievance must be brought pursuant to any applicable CBA.

21. Notwithstanding the express language of Paragraph 25 of the PLA and the manifest intent of the PLA's signatories, Defendant purported to bring the Demand pursuant to Paragraphs 26 and 29 of the PLA, based on UHHS's alleged exclusion of Harting from the NICU Project.

22. Paragraphs 26 and 29 of the PLA state:

> 26. Furthermore, if the Parties to this Agreement have any disagreements over interpretation or application of this Agreement (including on-site compliance), the aggrieved party shall have the right to process such dispute under the expedited settlement and arbitration procedures of the American Arbitration Association (except where judicial action is specifically provided for in Paragraph 23 or any other provision of this Agreement).
>
> 29. UH and the Contractors retain full and exclusive authority for the management of their operations and have no obligation to bargain over the exercise of their management rights.  Except as expressly limited by the provisions of this Agreement, the Contractors have the exclusive right to direct their working forces, including but not limited to the rights to select and utilize the means, methods, techniques, procedures and tools and materials for construction, and to hire, schedule, select supervision and tradesmen, promote, transfer, lay off, discharge, and make and enforce work rules for employees.  No rules, customs or practices shall be permitted or observed which in any way limit the selection or use of materials and equipment.

23. Paragraphs 26 and 29 of the PLA are inapplicable to allegations contained in the Demand because Local 310 is not a party to the PLA, as outlined in Paragraph 26, nor a "Contactor," as outlined in Paragraph 29.

24. Moreover, Rivera and Local 310 have an applicable collective bargaining agreement (the "CBA"), which would allow for Harting to bring a grievance against Rivera for his alleged termination.

25. Based on the Demand, an arbitration hearing was held on April 21, 2009 (the "Hearing") which addressed only the issue of arbitrability. Prior to the Hearing, Plaintiffs filed a Motion to Dismiss on the grounds that Plaintiffs had not agreed to arbitrate the allegations contained in the Demand and thus the Demand was not arbitrable. See Plaintiffs' Motion to Dismiss, attached hereto as Exhibit C. Thereafter, by agreement of the parties and the Arbitrator, the Hearing dealt only with Plaintiffs' Motion to Dismiss and the issue of arbitrability.

26. After the conclusion of the Hearing, the Arbitrator awarded judgment in Local 310's favor, finding that the Demand was arbitrable, and scheduled an arbitration hearing for the matter on May 29, 2009 (the "May 29, 2009 Hearing"). See May 5, 2009 Opinion and Award (the "Award"), attached hereto as Exhibit D.

27. Federal courts, not arbitrators, should determine whether a collective bargaining agreement requires a dispute to be resolved through arbitration.

28. The PLA is not susceptible to a reasonable interpretation that would find the Demand subject to arbitration under the PLA. Accordingly, the Award fails to follow the clear and unambiguous terms of the PLA, and the arbitrator has issued his own brand of justice in issuing the Award.

29. The Award should be vacated because it fails to draw its essence from the PLA because the Award conflicts with the express terms of the PLA, it imposes an additional requirement on UHHS that is not in the PLA, the arbitration of individual

worker grievances, it is without rational support, and it is based on general considerations of fairness and equity instead of the precise terms of the PLA.

30. Despite the filing of this action seeking to vacate the Award, Local 310 has taken the position that the arbitration on the merits must take place before this Court has an opportunity to review the issue that is solely within the jurisdiction of this Court – arbitrability.

31. If the hearing on the merits moves forward before this lawsuit is concluded, Plaintiffs will be irreparably harmed. First, if Plaintiffs participate in the hearing, they may be found to have waived the issue of arbitrability. Second, if Plaintiffs do not participate in the merits hearing, they may be found responsible for a Demand that is factually and legally flawed.

## **COUNT ONE**

32. Plaintiffs re-allege and re-state each and every allegation contained in Paragraphs 1 through 31 as if fully incorporated herein.

33. The Award should be vacated because it fails to draw its essence from the PLA.

34. Arbitration is a creature of contract, and, therefore, it is axiomatic that a party cannot be compelled to arbitrate a matter which it has not agreed to submit to arbitration. United Steelworkers v. Warrior & Gulf Nav. Co., 363 US 574, 582 (1960).

35. UHHS has not agreed to submit to arbitration of the Demand because: (1) neither Local 310 nor Harting are signatories to the PLA, and, thus, both lack standing to bring the Demand pursuant to Paragraphs 26 and 29; and (2) Paragraph 25 of the PLA evidences the parties' intent not to arbitrate this matter because it specifically states that a

worker, like Harting, with a "grievance about the terms and/or application of this Agreement" must assert that dispute pursuant to the "procedures set forth in the applicable collective bargaining agreements" and not the PLA.

36. Because UHHS has not agreed to submit to arbitration of the Demand: (1) the Award fails to draw its essence from the PLA; (2) the Arbitrator acted outside his authority under the PLA; and (3) the Arbitrator was not construing or applying properly the PLA.

37. Therefore , the Award must be vacated.

## COUNT TWO

38. Plaintiffs re-allege and re-state each and every allegation contained in Paragraphs 1 through 37 as if fully incorporated herein.

39. Despite the filing of this complaint and the fact that Plaintiffs' raised the issue of arbitrability at the Hearing, Local 310 has manifested its intent to proceed with the merits of this matter at the May 29, 2009 Hearing.  See May 20, 2009 Letter from the American Arbitration Association scheduling the May 29, 2009 Hearing on the merits, attached hereto as Exhibit E.

40. Moving forward with the May 29, 2009 Hearing on the merits while the issue of arbitrability is pending in front of this Court is unfair and prejudicial to Plaintiffs and could result in an arbitration award that is inconsistent with this Court's ultimate decision.

41. Further, forcing Plaintiffs to move forward on the merits of the Demand at the May 29, 2009 hearing may unfairly cause Plaintiffs to waive and forfeit their rights to their arbitrability claim and, in the process, usurp this Court's jurisdiction.

42. Therefore, the May 29, 2009 Hearing must be stayed until this Court can decide properly the issue of arbitrability.

43. Alternatively, Local 310 must be enjoined from going forward with the merits of the Demand at the May 29, 2009 Hearing.

**WHEREFORE**, Plaintiffs respectfully pray this Court grant relief as follows:

1. A judgment vacating the Award and an order dismissing the claim in its entirety.

2. A judgment awarding Plaintiffs their attorneys' fees and costs in pursuing the present Complaint;

3. A judgment awarding Plaintiffs a stay of the March 29, 2009 Hearing on the merits of the Demand and/or an injunction enjoining Local 310 from proceeding with the merits of the Demand at the May 29, 2009 Hearing; and

4. Any other relief that this Court may deem just and appropriate.

Respectfully submitted,

_____
David A. Campbell (0066494)
Charles F. Billington III (0083143)
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114-1724
Phone (216) 479-6100
Fax: (216) 479-6060
dacampbell@vssp.com
cfbillington0@vssp.com

*Attorneys for Plaintiffs*

9

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was sent via the Court's electronic filing system to all parties of record with the Court on the date of filing. Notice of this filing will be served to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ David A. Campbell
*One of the attorneys for Plaintiffs*