# Appendix Exhibit 3

# Respondent's Arbitration Brief
R000026-R000080

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| Building & Construction Laborers Local Union No. 310, | : | |
| | : | |
| Claimant, | : | Case No. 53 300 E 00098 09 |
| | : | |
| v. | : | Arbitrator Marvin J. Feldman, Esq. |
| | : | |
| University Hospitals Health Systems, Inc., *et al.*, | : | Case Manager: Carolyn T. Bridges |
| | : | |
| Respondents. | : | |

## ARBITRATION BRIEF OF RESPONDENTS UNIVERSITY HOSPITALS HEALTH SYSTEMS, INC. AND GILBANE CONSTRUCTION, INC.

Pursuant to the parties' agreement made at the April 21, 2009 hearing in the above-referenced matter, Respondents University Hospitals Health Systems, Inc. ("UHHS") and Gilbane Construction, Inc. ("Gilbane") (UHHS and Gilbane are collectively referred to herein as "Respondents") respectfully submit this arbitration brief in support of their position that this matter is not arbitrable and should be dismissed by the Arbitrator.

## I.    INTRODUCTION

Arbitration is a creature of contract, and, therefore, it is axiomatic that a party cannot be compelled to arbitrate a matter which it has not agreed to submit to arbitration.    United Steelworkers v. Warrior & Gulf Nav. Co., 363 US 574, 582 (1960).

The Demand for Arbitration (the "Demand") filed by Building & Construction Laborers Local No. 310 ("Local 310") on behalf of Michael Harting ("Harting") purports to arise out of the Project Labor Agreement ("PLA") between UHHS and the Cleveland Building and Construction Trades Council (the "Council").    Specifically, Local 310 alleges that UHHS violated the management rights clause of the PLA by excluding Harting from the worksite due to

R000026

misconduct.  Respondents have not agreed to submit Harting's dispute to arbitration under the PLA.  ((Transcript (hereinafter, "Tr. __") Joint Ex. 1 at ¶ 29.)[1]

Two paragraphs in the PLA address the right to arbitration.  The first paragraph that addresses arbitration is paragraph 26, which Local 310 cites in support of the Demand.  Paragraph 26 of the PLA provides:

> Furthermore, if the <u>Parties to this Agreement</u> have any disagreements over interpretation or application of this Agreement (including on-site compliance), the aggrieved party shall have the right to process such dispute under the expedited settlement and arbitration procedures of the American Arbitration Association (except where judicial action is specifically provided for in Paragraph 23 or any other provision of this Agreement).

(<u>See</u> Tr. Joint Ex. 1 at ¶ 26 (emphasis added).)

The second paragraph in the PLA that addresses arbitration is paragraph 25.  Respondents cite this paragraph in support of their position that the Demand is not arbitrable under the PLA based on its plain language.  Paragraph 25 of the PLA provides:

> <u>If a worker has any grievance about the terms and/or application of this Agreement</u> which are not covered by other provisions of this Agreement relating to dispute resolution, then such dispute shall be handled under the procedures set forth in the applicable collective bargaining agreements.

(<u>See</u> Tr. Joint Ex. 1 at ¶ 25 (emphasis added).)

At the hearing, Harting admitted that he is not a party to the PLA, but rather is a worker.  In addition, Local 310 and Harting admitted that Harting's employment was governed by a collective bargaining agreement between Local 310 and Harting's employer, and that this collective bargaining agreement contained grievance and arbitration procedures.  Finally, Local

---

[1] All references are to the transcript of the April 21, 2009 Hearing in the arbitration involving Building and Construction Laborers Local Union 310 and University Hospitals Health Systems, Inc. et al., Case No. 53 30 E 00098 09, hand delivered to the Arbitrator on April 22, 2009.

R000027

310 admitted that Harting could have asserted a demand for arbitration arising out of this matter against Harting's employer under this Local 310 collective bargaining agreement.

Based on these admissions and the plain language of the PLA, it is evident that Harting's grievance falls under Paragraph 25 of the PLA because he is a worker and his grievance arises out of the terms and/or application of the PLA.  Paragraph 25 is clear and unambiguous and Local 310 should not be permitted to circumvent the clear intent of the parties to the PLA.  Dep't of Veterans Affairs and Amer. Fed. of Gov't Emps., Local 933, 124 LA 1609 (Feldman 2008). Accordingly, the demand for arbitration should be presented under the Local 310 collective bargaining agreement, not the PLA.  Therefore, Respondents have not agreed to submit this dispute to arbitration under the PLA, and the Demand should be dismissed with prejudice.

## II.   ISSUE

Whether the Demand submitted by Local No. 310 on behalf of Claimant's union member, Michael Harting, is arbitrable pursuant to the PLA.  (Tr. p. 10-11, 43-44.)

## III.   RELEVANT, UNDISPUTED FACTS

On December 1, 2007, UHHS and the Council entered into the PLA.  (See Tr. Joint Ex. 1 (the PLA).)  The PLA is an overarching agreement entered into to aid UHHS in meeting certain societal, diversity, and regionalism goals within the Northeastern Ohio area.  (Id. at 14.) Moreover, the PLA practically serves the purpose of avoiding labor disputes between the Council and contractors on UHHS' various construction projects.  (Id. at 15.)

One such project is UHHS' Rainbow Neonatal Intensive Care Unit ("NICU"), which is part of UHHS' larger Vision 2010 project.  (Id. at 13.)  Harting was a construction worker on the NICU project.  (Tr. 24.)  UHHS never employed Harting, and, at all relevant times, Harting was employed by Rivera Construction ("Rivera").  (Id. at 24.)  Further, Local 310 and Rivera have an

3

R000028

applicable collective bargaining agreement, which would allow for Harting to bring a grievance against Rivera for his alleged termination. (Tr. 26.) Also, for this brief only, it is undisputed that Harting was excluded from the NICU project in February 2009. (Tr. 24-25.)[2]

Allegedly at issue in the Demand are three provisions of the PLA, specifically:

25.     If a worker has any grievance about the terms and/or application of this Agreement which are not covered by other provisions of this Agreement relating to dispute resolution, then such dispute shall be handled under the procedures set forth in the applicable collective bargaining agreements.

26.     Furthermore, if the Parties to this Agreement have any disagreements over interpretation or application of this Agreement (including on-site compliance), the aggrieved party shall have the right to process such dispute under the expedited settlement and arbitration procedures of the American Arbitration Association (except where judicial action is specifically provided for in Paragraph 23 or any other provision of this Agreement).

29.     UH and the Contractors retain full and exclusive authority for the management of their operations and have no obligation to bargain over the exercise of their management rights.   Except as expressly limited by the provisions of this Agreement, the Contractors have the exclusive right to direct their working forces, including but not limited to the rights to select and utilize the means, methods, techniques, procedures and tools and materials for construction, and to hire, schedule, select supervision and tradesmen, promote, transfer, lay off, discharge, and make and enforce work rules for employees.   No rules, customs or practices shall be permitted or observed which in any way limit the selection or use of materials and equipment.

Neither Harting nor Local 310 is a party or signatory to the PLA. (Tr. 23, Joint Ex. 1.) Similarly, Gilbane, one of the two Respondents, is also not a party to the PLA. (Tr. Joint Ex. 1.) In fact, the only signatories to the PLA are UHHS and the Council. (Tr. Joint Ex. 1.) Moreover, while Local 310 is a member of the Council, Local 310 itself is not a signatory to the PLA. (Tr. 34, Joint Ex. 1.) There has been no evidence that Local 310 has any authority to act on the behalf of the Council. And, while Harting is a member of Local 310, he is not an officer of

---

[2] Harting was excluded from the worksite pursuant to paragraph 7 of the PLA.

4

R000029

Local 310 nor a member of the Council in his individual capacity.  (Tr. 42.)

## IV.    LAW AND ARGUMENT

The law needed to decide this case is by no means novel.  Indeed, it was set out over 45 years ago in a series of cases now known as the Steelworkers Trilogy.  See United Steelworkers v. Amer. Mfg. Co., 363 US 564 (1960); United Steelworkers v. Warrior & Gulf Nav. Co., 363 US 574 (1960); and United Steelworkers v. Enter. Wheel & Car Corp., 363 US 593 (1960).

As correctly noted by the Arbitrator, the Steelworkers Trilogy establishes that where a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. []Doubts should be resolved in favor of coverage."  Warrior & Gulf, 363 U.S. at 582-83.

Of present importance, the Steelworkers Trilogy also holds that "arbitration is a matter of contract[,] and a party cannot be required to submit to arbitration of any dispute which he has not agreed so to submit."  Warrior & Gulf, 363 U.S. at 582; see also Service Emp. Int'l Union, Local 47 v. Cleveland Neighborhood Health Serv., Inc., 110 Ohio App.3d 328, 396 (Ohio Ct. App. 1996) (stating that despite the strong presumption in favor of arbitration of disputes, "a party cannot be compelled to arbitrate a dispute which is not part of an arbitration agreement").

While Respondents do not dispute the presumption of arbitrability inherent in the PLA, Respondents have not agreed to arbitrate the Demand under the PLA and this case should be dismissed as not arbitrable.

R000030

### A. Respondents Have Not Agreed to Arbitrate This Dispute Under Paragraph 26 of the PLA.

The Demand is simply a worker's grievance about the terms and/or application of the PLA. Therefore, Paragraph 26 is irrelevant, as it pertains to the parties to the PLA, and Local 310 and Harting are not parties to the PLA.

Under Paragraph 26, expedited arbitration is appropriate when the "Parties to [the] Agreement" have a dispute as to "the interpretation or application of [the] Agreement," and neither Local 310 nor Harting is a "party" to the Agreement. (Tr. 23, Joint Ex. 1.) The "Parties" referenced in Paragraph 26 refer to UHHS and the Council. (Id. at Joint Ex. 1.)

Therefore, because Paragraph 26 applies only to the "Parties" to the PLA and because neither Harting nor Local 310 is a party to the PLA, the Demand cannot be brought pursuant to Paragraph 26 of the PLA. As framed, the Demand is simply a worker's grievance about the terms and/or application of the PLA. (See Tr. 18; Demand.) Paragraph 25 of the PLA explicitly covers this situation:

> If a worker has any grievance about the terms and/or application of this Agreement which are not covered by other provisions of this Agreement relating to dispute resolution, then such dispute shall be handled under the procedures set forth in the applicable collective bargaining agreements.

(See Tr. Joint Ex. 1 at ¶ 25 (emphasis added).)

Thus, a finding of arbitrability under Paragraph 26 allows Claimant to pervert the clear language of Paragraph 26, along with the intent, purpose, and spirit of the PLA, in a way that does harm to the fundamentals of contractual interpretation and invites unbargained for arbitration. This arbitrator, in a recent decision, set forth the requirement that clear and unambiguous contract terms must control:

> It may well be that the grievant is guilty of inappropriate and

6

substandard conduct in taking an additional period of time off and in pursuing union business at a picnic of the union while on sick leave but the due process created under the terms of the agreement must be respected in favor of the grievant. Simply put, the employer failed to follow the exact words of the contract and those words state that a failure to follow time limits causes a waiver of further activity on the part of management as to discipline in this particular matter. While arbitrators do not condone forfeiture, the fact remains that where the parties by and through their collective bargaining agreement have agreed to a course of conduct by the words revealed therein, that course of conduct cannot be diluted or waived by virtue of arbitral mandate. The contract says what it says and it must be respected. This arbitrator will not condone the creation of another clause overriding the written word or diluting the activity expected under the negotiated written word of the agreement. To do so would be to hold the parties' so.

Dep't of Veterans Affairs and Amer. Fed. of Gov't Emps., Local 933, 124 LA 1609 (Feldman 2008) (emphasis added).

Local 310, non-signatories to the PLA, should not be allowed to obtain expedited arbitration under Paragraph 26 of the PLA. If UHHS wished to bargain directly with the union's individual workers, it would have so provided explicitly in the PLA. Because the Demand does not fit within Paragraph 26, UHHS has not agreed to arbitrate, and a finding of non-arbitrability is warranted.

### B.    Local 310 Lacks Standing to Bring this Demand Under Paragraph 29.

Local 310 claims that the Demand is properly brought because Respondents have overstepped their bounds under Paragraph 29. This argument fails because Claimant lacks standing to assert the rights granted in Paragraph 29.

Claimant lacks standing under Paragraph 29 because that provision outlines the management rights of UHHS and the contractors working under the PLA. Neither Harting nor Local 310 is a contractor, and, therefore, neither can enforce the rights and/or privileges granted to the contractors.

7

Under Ohio law:

> [A] contract binds, and confers rights on, only the parties thereto and persons in privity with them, and accordingly no one can sue for a breach of contract unless he is a party or derives rights from an original party. The contract itself determines the legal rights and liabilities of the parties and confers the legal right of recovery

Delly v. Lehtonen, 21 Ohio App.3d 90, 90 (Ohio Ct. App. 1984). Moreover, "the mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient" to grant a nonparty to a contract contractual rights. Ramirez v. Shagawat, No. 83259, 2004 WL 396335, at *4 (Ohio Ct. App. March 4, 2004). Notably, the court in Ramirez found that a carpenter could not enforce a contract against a non-party who co-owned a property on which the carpenter performed services with the defendant. Ramirez, No. 83259, 2004 WL 396335, at *4. Similarly, Local 310 cannot now assert rights granted to UHHS and its contractors under the PLA simply because it is tangentially related to a party to the PLA.

Paragraph 29 of the PLA states that "Contractors have the exclusive right to direct their working forces, including but not limited to the rights to . . . hire, schedule . . . , lay off, [and] discharge." See PLA at ¶ 29. Claimant, a union, does not have standing to assert the purported rights of Rivera, a contractor. As Rivera is not a party to the Demand, Local 310 may not assert Rivera's rights in its absence as a matter of law. Paragraph 29 grants no rights to Local 310 and is therefore unenforceable by Local 310.

Further, allowing this Demand to proceed sets a dangerous precedent, which would allow any union which is a member of the Council to enforce any provision of the PLA if they believe it has somehow been violated, subjecting UHHS to a potential deluge of unbargained-for expedited arbitrations. Such a result is not warranted and, instead of promoting the expedient

8

R000033

flow of work on UHHS' projects by forestalling work-stoppages, it would serve to chill and overly-complicate relations between UHHS and the unions.

### C.   Harting's Grievance is Properly Brought Under Local 310's Collective Bargaining Agreement with Rivera Construction.

UHHS' intention not to arbitrate this matter is evident in the plain language of the PLA. Specifically, paragraph 25 states:

> 25.    If a worker has any grievance about the terms and/or application of this Agreement which are not covered by other provisions of this Agreement relating to dispute resolution, then such dispute shall be handled under the procedures set forth in the applicable collective bargaining agreements.

Paragraph 25 unambiguously provides a mechanism for redress of Harting's alleged injuries. Thus, it is clear that the parties to the PLA agreed that disputes such as this should be governed by the applicable collective bargaining agreements and not the PLA.

As stated, the underlying dispute involves Harting's claim that he was improperly excluded from a UHHS project, thereby preventing him from maintaining his employment with Rivera "without just and sufficient cause."  (See Demand.) The facts could not be more clear: a worker has a grievance about the application of the PLA, which no provision of the PLA covers. Therefore, under the express language of paragraph 25, Harting must file a grievance against Rivera pursuant to Local 310's collective bargaining agreement, which he has failed to do. (Tr. 25.)

Based on a plain reading of the PLA, paragraph 25 plainly governs this dispute. Thus, again it is evident that Respondents have not agreed to arbitrate this matter, and the Demand should be dismissed on a finding of no arbitrability.

9

## V.    <u>CONCLUSION</u>

Based on the foregoing, Respondents have not agreed to arbitrate this matter and the

Demand should thus be dismissed on a finding of no arbitrability.

Respectfully submitted,

David A. Campbell (0066494)
Charles F. Billington III (0083143)
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114-1724
Telephone: 216 -479-6100
Facsimile:  216-479-6060
E-mail:     dacampbell@vorys.com
             cfbillington@vorys.com

*Attorneys for Respondents*

10

R000035

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing

*Arbitration Brief of Respondents University Hospitals Health Systems, Inc. and Gilbane Building*

*Construction, Inc.* has been served via hand delivery, this 28th day of April, 2009, upon the

following:

Marvin J. Feldman, Esq.
1104 The Superior Bldg.
815 Superior Avenue N.E.
Cleveland, OH  44114

*One of the Attorneys for Respondents*
*University Hospitals Health System,*
*Inc. and Gilbane Building Company*

11

R000036

R000037

Westlaw.

80 S.Ct. 1347

363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629

**(Cite as: 363 U.S. 574, 80 S.Ct. 1347)**

Page 1

☞

Supreme Court of the United States
UNITED STEELWORKERS OF AMERICA, Petitioner,
v.
WARRIOR AND GULF NAVIGATION COMPANY.
No. 443.

Argued April 27, 1960.
Decided June 20, 1960.

Action by union to compel arbitration by employer. The United States District Court for the Southern District of Alabama, 168 F.Supp. 702, entered judgment for employer and union appealed. The United States Court of Appeals for the Fifth Circuit, 269 F.2d 633, affirmed and Supreme Court granted certiorari. The Supreme Court, Mr. Justice Douglas, held that where collective bargaining agreement provided that if differences arose or any local trouble of any kind arose grievance procedure including arbitration should be applicable, notwithstanding inclusion of clause that matters which were strictly a function of management should not be subject to arbitration, grievance arising because of employer's action in contracting out maintenance work previously done by its employees was subject to arbitration.

Reversed.

Mr. Justice Whittaker, dissented.

For concurring opinion see 80 S.Ct. 1363.

West Headnotes

**[1] Labor and Employment 231H ☜1100**

231H Labor and Employment
  231HXII Labor Relations
    231HXII(C) Collective Bargaining
      231Hk1100 k. In General. Most Cited
Cases
    (Formerly 232Ak171 Labor Relations)
Present federal policy is to promote industrial stabilization through collective bargaining agreement. National Labor Relations Act, s 8(d) as amended by Labor Management Relations Act of 1947, 29 U.S.C.A. s 158(d).

**[2] Labor and Employment 231H ☜1541**

231H Labor and Employment
  231HXII Labor Relations
    231HXII(H) Alternative Dispute Resolution
      231HXII(H)3 Arbitration Agreements
        231Hk1541 k. In General. Most Cited
Cases
    (Formerly 232Ak431 Labor Relations)
Arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process.

**[3] Labor and Employment 231H ☜1556(3)**

231H Labor and Employment
  231HXII Labor Relations
    231HXII(H) Alternative Dispute Resolution
      231HXII(H)3 Arbitration Agreements
        231Hk1552 Enforcement of Agreement to Arbitrate
          231Hk1556 Proceedings
            231Hk1556(3) k. Scope of Inquiry; Merits of Controversy. Most Cited Cases
    (Formerly 232Ak436 Labor Relations)
By statute court has duty of determining whether reluctant party in arbitration process has breached his promise to arbitrate. Labor Management Relations Act of 1947, § 301, 29 U.S.C.A. § 185.

**[4] T ☜112**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(A) Nature and Form of Proceeding
      25Tk112 k. Contractual or Consensual
Basis. Most Cited Cases

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000038

80 S.Ct. 1347                                                                                           Page 2
363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629
(Cite as: 363 U.S. 574, 80 S.Ct. 1347)

(Formerly 33k1 Arbitration)
Arbitration is a matter of contract and a party can-not be required to submit to arbitration any dispute which he has not agreed to so submit.

**[5] Labor and Employment 231H ⟵⟶1549(2)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)3 Arbitration Agreements
                231Hk1543 Construction and Opera-tion
                231Hk1549 Matters Subject to Ar-bitration Under Agreement
                    231Hk1549(2) k. Arbitration Favored; Presumption of Arbitrability. Most Cited Cases
    (Formerly 232Ak436 Labor Relations)

**Labor and Employment 231H ⟵⟶1556(3)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)3 Arbitration Agreements
                231Hk1552 Enforcement of Agree-ment to Arbitrate
                231Hk1556 Proceedings
                  231Hk1556(3) k. Scope of In-quiry; Merits of Controversy. Most Cited Cases
    (Formerly 232Ak436 Labor Relations)
To be consistent with congressional policy favoring settlement of disputes through arbitration, judicial inquiry in suit to compel arbitration must be strictly confined to question of whether reluctant party did agree to arbitrate grievance or agreed to give arbit-rator power to make the award he made, and an or-der to arbitrate should not be denied unless it may be said with positive assurance that arbitration clause is not susceptible to an interpretation that covers the asserted dispute; all doubts should be re-solved in favor of coverage. Labor Management Relations Act of 1947, § 301, 29 U.S.C.A. § 185.

**[6] Labor and Employment 231H ⟵⟶1549(4)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)3 Arbitration Agreements
                231Hk1543 Construction and Opera-tion
                  231Hk1549 Matters Subject to Ar-bitration Under Agreement
                  231Hk1549(4) k. Arbitrability. Most Cited Cases
    (Formerly 232Ak436, 232Ak434 Labor Rela-tions)
Under collective bargaining agreement providing for grievance procedure including the submission to arbitration of any differences arising as to meaning and application of agreement as well as any local trouble of any kind, but that matters which are strictly a function of management shall not be sub-ject to arbitration, question of arbitrability of partic-ular grievance was for the court to decide.

**[7] Labor and Employment 231H ⟵⟶1556(7)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)3 Arbitration Agreements
                231Hk1552 Enforcement of Agree-ment to Arbitrate
                231Hk1556 Proceedings
                  231Hk1556(7) k. Evidence. Most Cited Cases
    (Formerly 232Ak436 Labor Relations, 33k23.10, 95k2921/2, 95k292)
Where assertion by claimant is that the parties ex-cluded from court's determination not merely de-cision on merits of grievance but also the question of its arbitrability, vesting power to make both de-cisions in arbitrator, claimant must bear burden of a clear demonstration of the purpose.

**[8] Labor and Employment 231H ⟵⟶70**

231H Labor and Employment
    231HIII Rights and Duties of Employers and Employees in General

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

231Hk70 k. In General. Most Cited Cases
(Formerly 232Ak4 Labor Relations)

**Labor and Employment 231H €══1235**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(E) Labor Contracts
            231Hk1235 k. In General. Most Cited Cases
    (Formerly 232Ak4 Labor Relations)
Management hires and fires, pays and promotes, supervises and plans, and all these are part of its function, and absent a collective bargaining agreement it may be exercised freely except as limited by public law and by willingness of employees to work under the particular unilaterally imposed conditions.

**[9] Labor and Employment 231H €══1269**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(E) Labor Contracts
            231Hk1268 Construction
                231Hk1269 k. In General. Most Cited Cases
    (Formerly 232Ak257.1, 232Ak257 Labor Relations)
Collective bargaining agreements regulate or restrict exercise of management functions but do not oust management from the performance of them.

**[10] Labor and Employment 231H €══1549(20)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)3 Arbitration Agreements
                231Hk1543 Construction and Operation
                    231Hk1549 Matters Subject to Arbitration Under Agreement
                        231Hk1549(20) k. Contracting Out Work. Most Cited Cases
    (Formerly 232Ak434.7, 232Ak434 Labor Relations)

tions)
Where collective bargaining agreement provided for a detailed grievance procedure and stated that if differences arose or if any local trouble of any kind arose grievance prodecure including arbitration as ultimate step should be applicable, notwithstanding inclusion of statement that matters which were "strictly a function of management" should not be subject to arbitration, grievance arising because of employer's action in contracting out work previously done by its employees was subject to arbitration, since phrase "strictly a function of management" must be interpreted as referring only to that over which contract gave management complete control and unfettered discretion. Labor Management Relations Act of 1947, § 301(a), 29 U.S.C.A. § 185(a).

**[11] Labor and Employment 231H €══1556(3)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)3 Arbitration Agreements
                231Hk1552 Enforcement of Agreement to Arbitrate
                    231Hk1556 Proceedings
                        231Hk1556(3) k. Scope of Inquiry; Merits of Controversy. Most Cited Cases
    (Formerly 232Ak416.8, 232Ak416 Labor Relations)
Since any attempt by court to infer a purpose to exclude certain claims from arbitration under collective bargaining agreement necessarily comprehends the merits, court should view with suspicion an attempt to persuade it to become entangled in the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

**[12] Labor and Employment 231H €══1549(3)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000040

231HXII(H)3 Arbitration Agreements
    231Hk1543 Construction and Operation
        231Hk1549 Matters Subject to Arbitration Under Agreement
            231Hk1549(3) k. Exclusion Clauses. Most Cited Cases
    (Formerly 232Ak434.1, 232Ak434 Labor Relations, 33k7.4, 95k2921/2)

In absence of any express provision excluding a particular grievance from arbitration only the most forceful evidence of a purpose to exclude claim from arbitration can prevail particularly where exclusion clause is vague and arbitration clause quite broad.

## Labor and Employment 231H ⟐1549(3)

231H Labor and Employment
    231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
        231HXII(H)3 Arbitration Agreements
        231Hk1543 Construction and Operation
          231Hk1549 Matters Subject to Arbitration Under Agreement
            231Hk1549(3) k. Exclusion Clauses. Most Cited Cases
    (Formerly 232Ak434.1, 232Ak434 Labor Relations)

The purpose to exclude certain matters from arbitration under bargaining agreement providing for arbitration must be spelled out.

## Labor and Employment 231H ⟐1556(3)

231H Labor and Employment
    231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
        231HXII(H)3 Arbitration Agreements
        231Hk1552 Enforcement of Agreement to Arbitrate
        231Hk1556 Proceedings
          231Hk1556(3) k. Scope of Inquiry; Merits of Controversy. Most Cited Cases
    (Formerly 232Ak436 Labor Relations)

Merits of a controversy may not be inquired into under guise of determining arbitrability under bargaining agreement.

**1349 *575** Mr. David E. Feller, Washington, D.C., for petitioner.

Mr. Samuel Lang, New Orleans, La., for respondent.

Opinion of the Court by Mr. Justice DOUGLAS, announced by Mr. Justice BRENNAN.

Respondent transports steel and steel products by barge and maintains a terminal at Chickasaw, Alabama, where it performs maintenance and repair work on its barges. The employees at that terminal constitute a bargaining unit covered by a collective bargaining agreement negotiated by petitioner union. Respondent between 1956 and 1958 laid off some employees, reducing the bargaining unit from 42 to 23 men. This reduction was due in part to respondent contracting maintenance work, previously done by its employees, to other companies. The latter used respondent's supervisors to lay out the work and hired some of the laid-off employees of respondent (at reduced wages). Some were in fact assigned to work on respondent's barges. A number of employees signed a grievance which petitioner presented to respondent, the grievance reading:

'We are hereby protesting the Company's actions, of arbitrarily and unreasonably contracting out work to other concerns, that could and previously has been performed by Company employees.

'This practice becomes unreasonable, unjust and discriminatory in lieu (sic) of the fact that at present **576** there are a number of employees that have been laid off for about 1 and 1/2 years or more for allegedly lack of work.

'Confronted with these facts we charge that the Company is in violation of the contract by inducing a partial lock-out, of a number of the employees who would otherwise be working were it not for this unfair practice.'

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000041

363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629
**(Cite as: 363 U.S. 574, 80 S.Ct. 1347)**

The collective agreement had both a 'no strike' and a 'no lockout' provision. It also had a grievance procedure which provided in relevant part as follows:

'Issues which conflict with any Federal statute in its application as established by Court procedure or matters which are strictly a function of management shall not be subject to arbitration under this section.

'Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise, there shall be no suspension of work on account of such differences but an earnest effort shall be made to settle such differences immediately in the following manner:

**1350 'A. For Maintenance Employees:

'First, between the aggrieved employees, and the Foreman involved;

'Second, between a member or members of the Grievance Committee designated by the Union, and the Foreman and Master Mechanic.

'Fifth, if agreement has not been reached the matter shall be referred to an impartial umpire for decision. The parties shall meet to decide on an umpire acceptable to both. If no agreement on selection of an umpire is reached, the parties shall jointly petition*577 the United States Conciliation Service for suggestion of a list of umpires from which selection shall be made. The decision of the umpire will be final.'

Settlement of this grievance was not had and respondent refused arbitration. This suit was then commenced by the union to compel it.[FN1]

> FN1. Section 301(a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. s 185(a), 29 U.S.C.A. s 185(a), provides:

> 'Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.'See Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912.

The District Court granted respondent's motion to dismiss the complaint. 168 F.Supp. 702. It held after hearing evidence, much of which went to the merits of the grievance, that the agreement did not 'confide in an arbitrator the right to review the defendant's business judgment in contracting out work.' Id., at page 705. It further held that 'the contracting out of repair and maintenance work, as well as construction work, is strictly a function of management not limited in any respect by the labor agreement involved here.'Ibid. The Court of Appeals affirmed by a divided vote, 269 F.2d 633, 635, the majority holding that the collective agreement had withdrawn from the grievance procedure 'matters which are strictly a function of management' and that contracting out fell in that exception. The case is here on a writ of certiorari. 361 U.S. 912, 80 S.Ct. 255, 4 L.Ed.2d 183.

[1] We held in Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, that a grievance arbitration provision in a collective agreement could be enforced by reason of s 301(a) of the Labor Management Relations Act[FN2] and that the policy to be applied in enforcing this type of arbitration *578 was that reflected in our national labor laws. Id., 353 U.S. at pages 456-457, 77 S.Ct. at pages 917-918. The present federal policy is to promote industrial stabilization through the collective bargaining agreement.[FN3] Id., 353 U.S. at pages 453-454, 77 S.Ct. at page 916. A major factor in achieving industrial peace is the inclusion of a

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

80 S.Ct. 1347
363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629
**(Cite as: 363 U.S. 574, 80 S.Ct. 1347)**

Page 6

provision for arbitration of grievances in the collective bargaining agreement.[FN4]

FN2. Note 1, supra.

FN3. In s 8(d) of the National Labor Relations Act, as amended by the 1947 Act, 29 U.S.C. s 158(d), 29 U.S.C.A. s 158(d), Congress indeed provided that where there was a collective agreement for a fixed term the duty to bargain did not require either party 'to discuss or agree to any modification of the terms and conditions contained in' the contract. And see National Labor Relations Board v. Sands Mfg. Co., 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682.

FN4. Complete effectuation of the federal policy is achieved when the agreement contains both an arbitration provision for all unresolved grievances and an absolute prohibition of strikes, the arbitration agreement being the 'quid pro quo' for the agreement not to strike. Textile Workers v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 917.

**1351 [2] Thus the run of arbitration cases, illustrated by Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 becomes irrelevant to our problem. There the choice is between the adjudication of cases or controversies in courts with established procedures or even special statutory safeguards on the one hand and the settlement of them in the more informal arbitration tribunal on the other. In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself.

The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. See *579Shulman, Reason, Contract, and Law in Labor Relations, 68 Harv.L.Rev. 999, 1004-1005.The collective agreement covers the whole employment relationship.[FN5] It calls into being a new common law-the common law of a particular industry or of a particular plant. As one observer has put it:[FN6]

FN5.'Contracts which ban strikes often provide for lifting the ban under certain conditons. Unconditional pledges against strikes are, however, somewhat more frequent than conditional ones. Where conditions are attached to no-strike pledges, one or both of two approaches may be used: certain subjects may be exempted from the scope of the pledge, or the pledge may be lifted after certain procedures are followed by the union. (Similar qualifications may be made in pledges against lockouts.)

'Most frequent conditions for lifting no-strike pledges are: (1) The occurrence of a deadlock in wage reopening negotiations; and (2) violation of the contract, especially non-compliance with the grievance procedure and failure to abide by an arbitration award.

'No-strike pledges may also be lifted after compliance with specified procedures. Some contracts permit the union to strike after the grievance procedure has been exhausted without a settlement, and where arbitration is not prescribed as the final recourse. Other contracts permit a strike if mediation efforts fail, or after a specified cooling-off period.'Collective Bargaining, Negotiations and Contracts, Bureau of National Affairs, Inc., 77:101.

FN6. Cox, Reflections Upon Labor Arbit-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ration, 72 Harv.L.Rev. 1482, 1498-1499 (1959).

'* * * (I)t is not unqualifiedly true that a collective-bargaining agreement is simply a document by which the union and employees have imposed upon management limited, express restrictions of its otherwise absolute right to manage the enterprise, so that an employee's claim must fail unless he can point to a specific contract provision upon which the claim is founded,. There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics **\*580** and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a need unless they stated a contrary rule in plain words.'

A collective bargaining agreement is an effort to erect a system of industrial self-government. When most parties enter**\*\*1352** into contractual relationship they do so voluntarily, in the sense that there is no real compulsion to deal with one another, as opposed to dealing with other parties. This is not true of the labor agreement. The choice is generally not between entering or refusing to enter into a relationship, for that in all probability pre-exists the negotiations. Rather it is between having that relationship governed by an agreed-upon rule of law or leaving each and every matter subject to a temporary resolution dependent solely upon the relative strength, at any given moment, of the contending forces. The mature labor agreement may attempt to regulate all aspects of the complicated relationship, from the most crucial to the most minute over an extended period of time. Because of the compulsion to reach agreement and the breadth of the matters covered, as well as the need for a fairly concise and readable instrument, the product of negotiations (the written document) is, in the words of the late Dean Shulman, 'a compilation of diverse provisions: some provide objective criteria almost automatically applicable; some provide more or less specific standards which require reason and judgment in their application; and some do little more than leave problems to future consideration with an expression of hope and good faith.'Shulman, supra, at 1005. Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement. Many of the specific practices**\*581** which underlie the agreement may be unknown, except in hazy form, even to the negotiators. Courts and arbitration in the context of most commercial contracts are resorted to because there has been a breakdown in the working relationship of the parties; such resort is the unwanted exception. But the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.

Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement.

The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed by foreign to the competence of courts.

'A proper conception of the arbitrator's function is

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

80 S.Ct. 1347
363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629
(Cite as: 363 U.S. 574, 80 S.Ct. 1347)

Page 8

basic. He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties. * * *'Shulman, supra, at 1016.

The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial *582 common law-the practices of the industry and the shop-is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not **1353 only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.

[3][4][5][6][7] The Congress, however, has by s 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under s 301 must be strictly confined to the

question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation*583 that covers the asserted dispute. Doubts should be resolved in favor of coverage.FN7

> FN7. It is clear that under both the agreement in this case and that involved in American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, the question of arbitrability is for the courts to decide. Cf. Cox, Reflections Upon Labor Arbitration. 72 Harv.L.Rev. 1482, 1508-1509.Where the assertion by the claimant is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a clear demonstration of that purpose.

We do not agree with the lower courts that contracting-out grievances were necessarily excepted from the grievance procedure of this agreement. To be sure, the agreement provides that 'matters which are strictly a function of management shall not be subject to arbitration.'But it goes on to say that if 'differences' arise or if 'any local trouble of any kind' arises, the grievance procedure shall be applicable.

[8][9][10] Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them. Management hires and fires, pays and promotes, supervises and plans. All these are part of its function, and absent a collective bargaining agreement, it may be exercised freely except as limited by public law and by the willingness of employees to work under the particular, unilaterally imposed conditions. A collective bargaining

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case: 1:09-cv-01192-CAB   Doc #: 31-5   Filed: 04/14/10   22 of 56.   PageID #: 1823

80 S.Ct. 1347                                                                    Page 9
363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629
(Cite as: 363 U.S. 574, 80 S.Ct. 1347)

agreement may treat only with certain specific practices, leaving the rest to management but subject to the possibility of work stoppages. When, however, an absolute no-strike clause is included in the agreement, then in a very real sense everything that management does is subject to the agreement, for either management is prohibited or limited in the action it takes, or if not, it is protected from interference by strikes. This comprehensive reach of the collective bargaining agreement does not mean, *584 however, that the language, 'strictly a function of management,' has no meaning.

'Strictly a function of management' might be thought to refer to any practice of management in which, under particular**1354 circumstances prescribed by the agreement, it is permitted to indulge. But if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception. Every grievance in a sense involves a claim that management has violated some provision of the agreement.

[11][12] Accordingly, 'strictly a function of management' must be interpreted as referring only to that over which the contract gives management complete control and unfettered discretion. Respondent claims that the contracting out of work falls within this category. Contracting out work is the basis of many grievances; and that type of claim is grist in the mills of the arbitrators.[FN8] A specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not a matter for arbitration. In such a case a grievance based solely on contracting out would not be arbitrable. Here, however, there is no such provision. Nor is there any showing that the parties designed the phrase 'strictly a function of management' to encompass any and all forms of contracting out. In the absence of any *585 express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration

can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

> FN8. See Celanese Corp. of America, 33 Lab.Arb.Rep. 925, 941 (1959), where the arbiter in a grievance growing out of contracting out work said:
>
> 'In my research I have located 64 published decisions which have been concerned with this issue covering a wide range of factual situations but all of them with the common characteristic-i.e., the contracting-out of work involved occurred under an Agreement that contained no provision that specifically mentioned contracting-out of work.'

The grievance alleged that the contracting out was a violation of the collective bargaining agreement. There was, therefore, a dispute 'as to the meaning and application of the provisions of this Agreement' which the parties had agreed would be determined by arbitration.

The judiciary sits in these cases to bring into operation an arbitral process which substitutes a regime of peaceful settlement for the older regime of industrial conflict. Whether contracting out in the present case violated the agreement is the question. It is a question for the arbiter, not for the courts.

Reversed.

Mr. Justice FRANKFURTER concurs in the result.
Mr. Justice BLACK took no part in the consideration or decision of this case.
(For opinion of Mr. Justice BRENNAN, joined by

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

80 S.Ct. 1347                                                                                                 Page 10
363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629
(Cite as: 363 U.S. 574, 80 S.Ct. 1347)

Mr. Justice FRANKFURTER and Mr. Justice HARLAN, see 363 U.S. 569, 80 S.Ct. 1363.)

Mr. Justice WHITTAKER, dissenting.

Until today, I have understood it to be the unquestioned law, as this Court has consistently held, that arbitrators are private judges chosen by the parties to decide *586 particular matters specifically submitted;[FN1] that the contract under which **1355 matters are submitted to arbitrators is at once the source and limit of their authority and power;[FN2] and that their power to decide issues with finality, thus ousting the normal functions of the courts, must rest upon a clear, definitive agreement of the parties, as such powers can never be implied. United States v. Moorman, 338 U.S. 457, 462, 70 S.Ct. 288, 291, 94 L.Ed. 256;[FN3] Mercantile Trust Co. v. Hensey, 205 U.S. 298, 309, 27 S.Ct. 535, 539, 51 L.Ed. 811.[FN4] See also Fernandez & Hnos. v. Rickert Rice Mills, 1 Cir., 119 F.2d 809, 815, 136 A.L.R. 351;[FN5] Marchant v. Mead-Morrison Mfg. Co., 252 N.Y. 284, 299, 169 N.E. 386, 391;[FN6] *587Continental Milling & Feed Co. v. Doughnut Corp., 186 Md. 669, 676, 48 A.2d 447, 450;[FN7] Jacob v. Weisser, 207 Pa. 484, 489, 56 A. 1065, 1067.[FN8] I believe that the Court today departs from the established principles announced in these decisions.

FN1. 'Arbitrators are judges chosen by the parties to decide the matters submitted to them.' Burchell v. Marsh, 17 How. 344, 349, 15 L.Ed. 96.

FN2. 'The agreement under which (the arbitrators) were selected was at once the source and limit of their authority, and the award, to be binding, must, in substance and form, conform to the submission.' (Emphasis added.) Continental Ins. Co. v. Garrett, 6 Cir., 125 F. 589, 590- Opinion by Judge, later Mr. Justice, Lurton.

FN3. 'It is true that the intention of parties to submit their contractual disputes to final determination outside the courts should be made manifest by plain language.' (Emphasis added.) United States Moorman, 338 U.S. 457, 462, 70 S.Ct. 288, 291, 94 L.Ed. 256.

FN4. 'To make such (an arbitrator's) certificate conclusive requires plain language in the contract. It is not to be implied.' (Emphasis added.) Mercantile Trust Co. v. Hensey, 205 U.S. 298, 309, 27 S.Ct. 535, 539.

FN5. 'A party is never required to submit to arbitration any question which he has not agreed so to submit, and contracts providing for arbitration will be carefully construed in order not to force a party to submit to arbitration a question which he did not intend to be submitted.' (Emphasis added.) Fernandez & Hnos. v. Rickert Rice Mills, 1 Cir., 119 F.2d 809, 815, 136 A.L.R. 351.

FN6. In this leading case, Judge, later Mr. Justice, Cardozo said:

'The question is one of intention, to be ascertained by the same tests that are applied to contracts generally. * * *. No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the extent that he has signified his willingness. Our own favor or disfavor of the cause of arbitration is not to count as a factor in the appraisal of the thought of others.' (Emphasis added.) Marchant v. Mead-Morrison Mfg. Co., 252 N.Y. 284, 299, 169 N.E. 386, 391.

FN7. In this case, the Court, after quoting Judge Cardozo's language in Marchant, supra, saying that 'the question is one of intention,' said:

'Sound policy demands that the terms of an arbitration agreement must not be

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000047

80 S.Ct. 1347
363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629
(Cite as: 363 U.S. 574, 80 S.Ct. 1347)

Page 11

strained to discover power to pass upon matters in dispute, but the terms must be clear and unmistakable to oust the jurisdiction of the court, for trial by jury cannot be taken away in any case merely by implication.'(Emphasis added.) Continental Milling & Feed Co. v. Doughnut Corp., 186 Md. 669, 676, 48 A.2d 447, 450.

FN8.'But, under any circumstances, before the decision of an arbitrator can be held final and conclusive, it must appear, as was said in Chandley Bros. v. Cambridge Springs, 200 Pa. 230, 49 Atl. 772, that power to pass upon the subject-matter is clearly given to him.'The terms of the agreement are not to be strained to discover it. They must be clear and unmistakable to oust the jurisdiction of the courts; for trial by jury cannot by taken away by implication, merely, in any case.'' (Emphasis added.) Jacob v. Weisser, 207 Pa. 484, 489, 56 A. 1065, 1067.

Here, the employer operates a shop for the normal maintenance of its barges, but it is not equipped to make major repairs, and accordingly the employer has, from the beginning of its operations more than 19 years ago, contracted out its major repair work. During most, if not all, of this time the union has represented**1356 the employees in that unit. The District Court found that '(t) hroughout the successive labor agreements between these parties, including the present one, * * * (the union) has unsuccessfully sought to negotiate changes in the labor contracts, and particularly during the negotiation of the present labor agreement, * * * which would have limited *588 the right of the (employer) to continue the practice of contracting out such work.' 168 F.Supp. 702, 704-705.

The labor agreement involved here provides for arbitration of disputes respecting the interpretation and application of the agreement and, arguably, also some other things. But the first paragraph of the arbitration section says: '(M)atters which are

strictly a function of management shall not be subject to arbitration under this section.'Although acquiescing for 19 years in the employer's interpretation that contracting out work was 'strictly a function of management,' and having repeatedly tried-particularly in the negotiation of the agreement involved here-but unsuccessfully, to induce the employer to agree to a covenant that would prohibit it from contracting out work, the union, after having agreed to and signed the contract involved, presented a 'grievance' on the ground that the employer's contracting out work, at a time when some employees in the unit were laid off for lack of work, constituted a partial 'lockout' of employees in violation of the antilockout provision of the agreement.

Being unable to persuade the employer to agree to cease contracting out work or to agree to arbitrate the 'grievance,' the union brought this action in the District Court, under s 301 of the Labor Management Relations Act, 29 U.S.C. s 185, 29 U.S.C.A. s 185, for a decree compelling the employer to submit the 'grievance' to arbitration. The District Court, holding that the contracting out of work was, and over a long course of dealings had been interpreted and understood by the parties to be, 'strictly a function of management,' and was therefore specifically excluded from arbitration by the terms of the contract, denied the relief prayed, 168 F.Supp. 702, 705. The Court of Appeals affirmed, 269 F.2d 633, and we granted certiorari. 361 U.S. 912, 80 S.Ct. 255, 4 L.Ed.2d 183.

*589 The Court now reverses the judgment of the Court of Appeals. It holds that the arbitrator's source of law is 'not confined to the express provisions of the contract,' that arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' that '(d)oubts (of arbitrability) should be resolved in favor of coverage,' and that when, as here, 'an absolute no-strike clause is included in the agreement, then * * * everything that management does is subject to (arbitration).' I understand the Court

R000048

80 S.Ct. 1347
363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629
(Cite as: 363 U.S. 574, 80 S.Ct. 1347)

thus to hold that the arbitrators are not confined to the express provisions of the contract, that arbitration is to be ordered unless it may be said with positive assurance that arbitration of a particular dispute is excluded by the contract, that doubts of arbitrability are to be resolved in favor of arbitration, and that when, as here, the contract contains a no-strike clause, everything that management does is subject to arbitration.

This is an entirely new and strange doctrine to me. I suggest, with deference, that it departs from both the contract of the parties and the controlling decisions of this Court. I find nothing in the contract that purports to confer upon arbitrators any such general breadth of private judicial power. The Court cites no legislative or judicial authority that creates for or gives to arbitrators such broad general powers. And I respectfully submit that today's decision cannot be squared with the statement of Judge, later Mr. Justice, Cardozo in Marchant**1357 that 'No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the extent that he has signified his willingness. Our own favor or disfavor of the cause of arbitration is not to count as a factor in the appraisal of the thought of others.'(emphasis added), 252 N.Y., at page 299, 169 N.E., at page 391; nor with his statement*590 in that case that '(t)he question is one of intention, to be ascertained by the same tests that are applied to contracts generally,'id.; nor with this Court's statement in Moorman,'that the intention of the parties to submit their contractual disputes to final determination outside the courts should be made manifest by plain language' (emphasis added), 338 U.S., at page 462, 70 S.Ct. at page 291; nor with this Court's statement in Hensey that: 'To make such (an arbitrator's) certificate conclusive requires plain language in the contract. It is not to be implied.'(Emphasis added.) 205 U.S., at page 309, 27 S.Ct. at page 539.'A party is never required to submit to arbitration any question which he has not agreed so to submit, and contracts providing for arbitration will be carefully construed in order not to force a party to submit to

arbitration a question which he did not intend to be submitted.'(Emphasis added.) Fernandez & Hnos. v. Rickert Rice Mills, supra, 1 Cir., 119 F.2d at page 815.

With respect, I submit that there is nothing in the contract here to indicate that the employer 'signified (its) willingness' ( Marchant, supra, 252 N.Y. at page 299, 169 N.E. at page 391) to submit to arbitrators whether it must cease contracting out work. Certainly no such intention is 'made manifest by plain language' ( Moorman, supra, 338 U.S. at page 462, 70 S.Ct. at page 291), as the law 'requires,' because such consent 'is not to be implied.' Hensey, supra, 205 U.S. at page 309, 27 S.Ct. at page 539. To the contrary, the parties by their conduct over many years interpreted the contracting out of major repair work to be 'strictly a function of management,' and if, as the concurring opinion suggests, the words of the contract can 'be understood only by reference to the background which gave rise to their inclusion,' then the interpretation given by the parties over 19 years to the phrase 'matters which are strictly a function of management' should logically have some significance here. By their contract, the parties agreed that 'matters *591 which are strictly a function of management shall not be subject to arbitration.'The union over the course of many years repeatedly tried to induce the employer to agree to a covenant prohibiting the contracting out of work, but was never successful. The union again made such an effort in negotiating the very contract involved here, and, failing of success, signed the contract, knowing, of course, that it did not contain any such covenant, but that, to the contrary, it contained, just as had the former contracts, a covenant that 'matters which are strictly a function of management shall not be subject to arbitration.'Does not this show that, instead of signifying a willingness to submit to arbitration the matter of whether the employer might continue to contract out work, the parties fairly agreed to exclude at least that matter from arbitration? Surely it cannot be said that the parties agreed to such a submission by any 'plain language.'  Moorman, supra,

R000049

80 S.Ct. 1347

363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629

(Cite as: 363 U.S. 574, 80 S.Ct. 1347)

Page 13

338 U.S. at page 462, 70 S.Ct. at page 291, and Hensey, supra, 205 U.S. at page 309, 27 S.Ct. at page 539.Does not then the Court's opinion compel the employer 'to submit to arbitration (a) question which (it) has not agreed so to submit'? Fernandez & Hnos., supra, 119 F.2d at page 815.

Surely the question whether a particular subject or class of subjects is or is not made arbitrable by a contract is a judicial question, and if, as the concurring**1358 opinion suggests, 'the court may conclude that (the contract) commits to arbitration any (subject or class of subjects).' it may likewise conclude that the contract does not commit such subject or class of subjects to arbitration, and '(w)ith that finding the court will have exhausted its function' no more nor less by denying arbitration than by ordering it. Here the District Court found, and the Court of Appeals approved its finding, that by the terms of the contract, as interpreted by the parties over 19 years, the contracting out of work was 'strictly a function *592 of management' and 'not subject to arbitration.' That finding, I think, should be accepted here. Acceptance of it requires affirmance of the judgment.

I agree with the Court that courts have no proper concern with the 'merits' of claims which by contract the parties have agreed to submit to the exclusive jurisdiction of arbitrators. But the question is one of jurisdiction. Neither may entrench upon the jurisdiction of the other. The test is: Did the parties in their contract 'manifest by plain language' ( Moorman, supra, 338 U.S. at page 462, 70 S.Ct. at page 291) their willingness to submit the issue in controversy to arbitrators? If they did, then the arbitrators have exclusive jurisdiction of it, and the courts, absent fraud or the like must respect that exclusive jurisdiction and cannot interfere. But if they did not, then the courts must exercise their jurisdiction, when properly invoked, to protect the citizen against the attempted use by arbitrators of pretended powers actually never conferred. That question always is, and from its very nature must be, a judicial one. Such was the question presented to the

District Court and the Court of Appeals here. They found the jurisdictional facts, properly applied the settled law to those facts, and correctly decided the case. I would therefore affirm the judgment.

U.S. 1960.
United Steelworkers of America v. Warrior & Gulf Nav. Co.
363 U.S. 574, 80 S.Ct. 1347, 46 L.R.R.M. (BNA) 2416, 4 L.Ed.2d 1409, 40 Lab.Cas. P 66,629

END OF DOCUMENT

R000050

Westlaw.

80 S.Ct. 1343

363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403

**(Cite as: 363 U.S. 564, 80 S.Ct. 1343)**

Page 1

☞

Supreme Court of the United States

UNITED STEELWORKERS OF AMERICA, Petitioner,

v.

AMERICAN MANUFACTURING CO.

No. 360.

Argued April 27, 1960.

Decided June 20, 1960.

Suit by union to compel arbitration of grievance which union, acting for a member, had filed with member's employer. The United States District Court for the Eastern District of Tennessee, Southern Division, entered summary judgment for employer and union appealed. The United States Court of Appeals for the Sixth Circuit, 264 F.2d 624, affirmed and Supreme Court granted writ of certiorari. The Supreme Court, Mr. Justice Douglas, held that where collective bargaining agreement contained provision that employer would employ and promote employees on basis of seniority where ability and efficiency were equal, and provided for a detailed grievance procedure including arbitration of all disputes between the parties as to meaning, interpretation and application of agreement, and employer, after injured employee's workmen's compensation claim was settled on the basis of a 25% permanent partial disability refused to re-employ employee and union filed a grievance claiming that employee was entitled to reinstatement under seniority provision, employer was required to submit dispute to arbitration, and court could not determine whether claim was a meritorious one.

Reversed.

For concurring opinion see 80 S.Ct. 1363.

West Headnotes

**[1] Labor and Employment 231H ☞1541**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)3 Arbitration Agreements
                231Hk1541 k. In General. Most Cited Cases
    (Formerly 232Ak433 Labor Relations)
Labor Management Relations Act's stated policy that final adjustment by method agreed upon by the parties is the desirable method for settlement of grievance disputes can be effectuated only if means chosen by parties for settlement of their differences under collective bargaining agreement is given full play. Labor Management Relations Act of 1947, § 203(d), 29 U.S.C.A. § 173(d).

**[2] Labor and Employment 231H ☞1549(1)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)3 Arbitration Agreements
                231Hk1543 Construction and Operation
                    231Hk1549 Matters Subject to Arbitration Under Agreement
                        231Hk1549(1) k. In General. Most Cited Cases
    (Formerly 232Ak434.1, 232Ak434 Labor Relations)
Where collective bargaining contract provided for submission of all grievances to arbitration, without any stated exception, agreement required arbitration of all grievances including claims that court might be unwilling to accept, and question was not whether in mind of court here was equity in claim. Labor Management Relations Act of 1947, § 203(a), 39 U.S.C.A. § 173(d).

**[3] Labor and Employment 231H ☞1549(1)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

231HXII(H)3 Arbitration Agreements
   231Hk1543 Construction and Operation
    231Hk1549 Matters Subject to Arbitration Under Agreement
     231Hk1549(1) k. In General.
Most Cited Cases
 (Formerly 232Ak434.1, 232Ak434 Labor Relations)
Where collective bargaining agreement called for submission of all grievances to arbitration, with no exception, no exception should be read into the grievance clause. Labor Management Relations Act of 1947, § 203(d), 29 U.S.C.A. § 173(d).

**[4] Labor and Employment 231H ☞1549(15)**

231H Labor and Employment
 231HXII Labor Relations
  231HXII(H) Alternative Dispute Resolution
   231HXII(H)3 Arbitration Agreements
    231Hk1543 Construction and Operation
     231Hk1549 Matters Subject to Arbitration Under Agreement
     231Hk1549(15) k. Classification and Seniority Rights. Most Cited Cases
 (Formerly 232Ak434.10, 232Ak434 Labor Relations)
Where collective bargaining agreement provided that employer would employ and promote employees on principle of seniority where ability and efficiency were equal, and also provided a detailed grievance procedure including arbitration of all disputes as to meaning, interpretation and application of agreement, and injured employee settled workmen's compensation claim on basis of a 25% permanent partial disability after which employer refused to rehire employee, employer was required to arbitrate grievance filed by union claiming employee's right to re-employment on basis of seniority regardless of whether court felt there was equity in claim. Labor Management Relations Act of 1947, § 203(d), 29 U.S.C.A. § 173(d).

**[5] Labor and Employment 231H ☞1270**

231H Labor and Employment
 231HXII Labor Relations
  231HXII(E) Labor Contracts
   231Hk1268 Construction
    231Hk1270 k. Purpose of Agreement.
Most Cited Cases
 (Formerly 232Ak257.1, 232Ak257 Labor Relations)

**Labor and Employment 231H ☞1273**

231H Labor and Employment
 231HXII Labor Relations
  231HXII(E) Labor Contracts
   231Hk1268 Construction
    231Hk1273 k. Negotiations; Extrinsic Circumstances. Most Cited Cases
 (Formerly 232Ak257.1, 232Ak257 Labor Relations)
In developing a meaningful body of law for interpretation and enforcement of collective bargaining agreements, special heed should be given to context in which collective bargaining agreements are negotiated and the purpose they are intended to serve.

**[6] T ☞198**

25T Alternative Dispute Resolution
 25TII Arbitration
  25TII(D) Performance, Breach, Enforcement, and Contest
   25Tk197 Matters to Be Determined by Court
    25Tk198 k. In General. Most Cited Cases
 (Formerly 33k23.8 Arbitration, 95k2921/2)
Where parties have agreed to submit all questions of contract interpretation to arbitrator, function of court is very limited since it is then confined to ascertaining whether party seeking arbitration is making a claim which on its face is governed by contract, and whether moving party is right or wrong is a question of contract interpretation for the arbitrator.

**[7] Labor and Employment 231H ☞1556(3)**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

80 S.Ct. 1343
363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403
**(Cite as: 363 U.S. 564, 80 S.Ct. 1343)**

231H Labor and Employment
   231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
         231HXII(H)3 Arbitration Agreements
            231Hk1552 Enforcement of Agreement to Arbitrate
               231Hk1556 Proceedings
                  231Hk1556(3) k. Scope of Inquiry; Merits of Controversy. Most Cited Cases
        (Formerly 232Ak436 Labor Relations, 33k23.16, 95k2921/2)
Where parties have agreed to submit all disputes to arbitration, court has no business in weighing merits of grievance or determining whether there is particular language in written instrument which will support claim.

**Labor and Employment 231H ☞1549(3)**

231H Labor and Employment
   231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
         231HXII(H)3 Arbitration Agreements
            231Hk1543 Construction and Operation
               231Hk1549 Matters Subject to Arbitration Under Agreement
                  231Hk1549(3) k. Exclusion Clauses. Most Cited Cases
        (Formerly 232Ak434.1, 232Ak434 Labor Relations)
The purpose to exclude certain matters from arbitration under bargaining agreement providing for arbitration must be spelled out.

**Labor and Employment 231H ☞1556(3)**

231H Labor and Employment
   231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
         231HXII(H)3 Arbitration Agreements
            231Hk1552 Enforcement of Agreement to Arbitrate
               231Hk1556 Proceedings
                  231Hk1556(3) k. Scope of Inquiry; Merits of Controversy. Most Cited Cases

        (Formerly 232Ak436 Labor Relations)
Merits of a controversy may not be inquired into under guise of determining arbitrability under bargaining agreement.

**Labor and Employment 231H ☞1549(15)**

231H Labor and Employment
   231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
         231HXII(H)3 Arbitration Agreements
            231Hk1543 Construction and Operation
               231Hk1549 Matters Subject to Arbitration Under Agreement
                  231Hk1549(15) k. Classification and Seniority Rights. Most Cited Cases
        (Formerly 232Ak434.10 Labor Relations)
Where collective bargaining agreement stated that principle of seniority was recognized as factor in re-employment where ability an efficiency were equal and that, if satisfactory agreement on grievance could not be reached, grievance should be submitted to arbitration, and employee received award for partial permanent disability in workmen's compensation proceeding in Tennessee in part on basis of statement by his physician that employee could not lift over 30 pounds of weight, but same physician stated a month later that employee was able to return to his former duties requiring him to lift heavy objects, so-called grievance resulting from employer's refusal to re-employ employee at his former position was a frivolous an patently baseless one and was not subject to arbitration. Labor Management Relations Act of 1947, § 301(a), 29 U.S.C.A. § 185(a); T.C.A. § 50-901 et seq.
**1344 *564 Mr. David E. Feller, Washington, D.C., for petitioner.

Mr. John S. Carriger, Chattanooga, Tenn., for respondent.

Opinion of the Court by Mr. Justice DOUGLAS, announced by Mr. Justice BRENNAN.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

80 S.Ct. 1343

363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403

**(Cite as: 363 U.S. 564, 80 S.Ct. 1343)**

Page 4

This suit was brought by petitioner union in the District Court to compel arbitration of a 'grievance' that petitioner, acting for one Sparks, a union member, had filed with the respondent, Sparks' employer. The employer defended on the ground (1) that Sparks is **1345 estopped from making his claim because he had a few days previously settled a workmen's compensation claim against the company on the basis that he was permanently partially disabled, (2) that Sparks is not physically able to *565 do the work, and (3) that this type of dispute is not arbitrable under the collective bargaining agreement in question.

The agreement provided that during its term there would be 'no strike,' unless the employer refused to abide by a decision of the arbitrator. The agreement sets out a detailed grievance procedure with a provision for arbitration (regarded as the standard form) of all disputes between the parties 'as to the meaning, interpretation and application of the provisions of this agreement.'<sup>FN1</sup>

> FN1. The relevant arbitration provisions read as follows:
>
> 'Any disputes, misunderstandings, differences or grievances arising between the parties as to the meaning, interpretation and application of the provisions of this agreement, which are not adjusted as herein provided, may be submitted to the Board of Arbitration for decision. * * *
>
> 'The arbitrator may interpret this agreement and apply it to the particular case under consideration but shall, however, have no authority to add to, subtract from, or modify the terms of the agreement. Disputes relating to discharges or such matters as might involve a loss of pay for employees may carry an award of back pay in whole or in part as may be determined by the Board of Arbitration.
>
> 'The decision of the Board of Arbitration

> shall be final and conclusively binding upon both parties, and the parties agree to observe and abide by same. * * *'

The agreement reserves to the management power to suspend or discharge any employee 'for cause.'<sup>FN2</sup> It also contains a provision that the employer will employ and promote employees on the principle of seniority *566 'where ability and efficiency are equal.'<sup>FN3</sup> Sparks left his work due to an injury and while off work brought an action for compensation benefits. The case was settled, Sparks' physician expressing the opinion that the injury had made him 25% 'permanently partially disabled.' That was on September 9. Two weeks later the union filed a grievance which charged that Sparks was entitled to return to his job by virtue of the seniority provision of the collective bargaining agreement. Respondent refused to arbitrate and this action was brought. The District Court held that Sparks, having accepted the settlement on the basis of permanent partial disability, was estopped to claim any seniority or employment rights and granted the motion for summary judgment. The Court of Appeals affirmed, 264 F.2d 624, for different reasons. After reviewing the evidence it held that the grievance is 'a frivolous, patently baseless one, not subject to arbitration under the collective bargaining agreement.' Id., at page 628. The case is here on a writ of certiorari, 361 U.S. 881, 80 S.Ct. 152, 4 L.Ed.2d 118.

> FN2. 'The Management of the works, the direction of the working force, plant layout and routine of work, including the right to hire, suspend, transfer, discharge or otherwise discipline any employee for cause, such cause being: infraction of company rules, inefficiency, insubordination, contagious disease harmful to others, and any other ground or reason that would tend to reduce or impair the efficiency of plant operation; and to lay off employees because of lack of work, is reserved to the Company, provided it does not conflict with

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000054

this agreement. * * *'

FN3. This provision provides in relevant part:

'The Company and the Union fully recognize the principle of seniority as a factor in the selection of employees for promotion, transfer, lay-off, re-employment, and filling of vacancies, where ability and efficiency are equal. It is the policy of the Company to promote employees on that basis.'

[1] Section 203(d) of the Labor Management Relations Act, 1947, 61 **1346 Stat. 154, 29 U.S.C. s 173(d), 29 U.S.C.A. s 173(d), states, 'Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * *'That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.

[2][3][4] A state decision that held to the contrary announced a principle that could only have a crippling effect on grievance*567 arbitration. The case was International Ass'n of Machinists v. Cutler-Hammer, Inc., 271 App.Div. 917, 67 N.Y.S.2d 317,affirmed 297 N.Y., 519, 74 N.E.2d 464. It held that 'If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration.' 271 App.Div. at page 918, 67 N.Y.S.2d at page 318. The lower courts in the instant case had a like preoccupation with ordinary contract law. The collective agreement requires arbitration of claims that courts might be unwilling to entertain. In the context of the plant or industry the grievance may assume proportions of which judges are ignorant. Yet, the agreement is to submit all grievances to arbitration, not merely those that a court may deem to be meritorious. There is no exception in the 'no strike'

clause and none therefore should be read into the grievance clause, since one is the quid pro quo for the other.^FN4 The question is not whether in the mind of the court there is equity in the claim. Arbitration is a stabilizing influence only as it serves as a vehicle for handling any and all disputes that arise under the agreement.

FN4. Cf. Structural Steel & Ornamental Iron Ass'n. v. Shopmens Local Union, D.C., 172 F.Supp. 354, where the employer sued for breach of the 'no strike' agreement.

[5][6] The collective agreement calls for the submission of grievances in the categories which it describes, irrespective of whether a court may deem them to be meritorious. In our role of developing a meaningful body of law to govern the interpretation and enforcement of collective bargaining agreements, we think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve. See Lewis v. Benedict Coal Corp., 361 U.S. 459, 468, 80 S.Ct. 489, 495, 4 L.Ed.2d 442. The function of the court is very limited when the parties have agreed to submit all *568 questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

[7] The courts, therefore, have no business weighing the merits of the grievance, ^FN5 considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

who are not a part **1347 of the plant environment may be quite unaware.[FN6]

FN5. See New Bedford Defense Products Division v. Local No. 1113, 1 Cir., 258 F.2d 522, 526.

FN6. Cox, Current Problems in the Law of Grievance Arbitration, 30 Rocky Mt.L.Rev. 247, 261 (1958) writes:

'The typical arbitration clause is written in words which cover, without limitation, all disputes concerning the interpretation or application of a collective bargaining agreement. Its words do not restrict its scope to meritorious disputes or two-sided disputes, still less are they limited to disputes which a judge will consider two-sided. Frivolous cases are often taken, and are expected to be taken, to arbitration. What one man considers frivolous another may find meritorious, and it is common knowledge in industrial relations circles that grievance arbitration often serves as a safety valve for troublesome complaints. Under these circumstances it seems proper to read the typical arbitration clause as a promise to arbitrate every claim, meritorious or frivolous, which the complainant bases upon the contract. The objection that equity will not order a party to do a useless act is outweighed by the cathartic value of arbitrating even a frivolous grievance and by the dangers of excessive judicial intervention.'

*569 The union claimed in this case that the company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement. Arbitration should have been ordered. When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting

the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal.

Reversed.

Mr. Justice FRANKFURTER concurs in the result
Mr. Justice WHITTAKER, believing that the District Court lacked jurisdiction to determine the merits of the claim which the parties had validly agreed to submit to the exclusive jurisdiction of a Board of Arbitrators ( Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972), concurs in the result of this opinion.
Mr. Justice BLACK took no part in the consideration or decision of this case.

U.S. 1960.
United Steelworkers of America v. American Mfg. Co.
363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

80 S.Ct. 1358
363 U.S. 593, 80 S.Ct. 1358, 46 L.R.R.M. (BNA) 2423, 4 L.Ed.2d 1424, 40 Lab.Cas. P 66,630
**(Cite as: 363 U.S. 593, 80 S.Ct. 1358)**

Page 1

☞

Supreme Court of the United States
UNITED STEELWORKERS OF AMERICA, Petitioner,
v.
ENTERPRISE WHEEL AND CAR CORP.
**No. 538.**

Argued April 28, 1960.
Decided June 20, 1960.

Suit by union for enforcement of provisions of arbitrator's award to whom labor dispute had been referred. The United States District Court for the Southern District of West Virginia, at Huntington, 168 F.Supp. 308, ordered compliance with award and employer appealed. The United States Court of Appeals for the Fourth Circuit, 269 F.2d 327, modified judgment and remanded case for further proceedings, and the Supreme Court granted certiorari. The Supreme Court, Mr. Justice Douglas, held that where collective bargaining agreement provided that if employee has been unjustly suspended or discharged employer shall reinstate employee with full compensation for time lost, and further provided for arbitration of disputes and stated that arbitrator's decision as to meaning and application of agreement shall be final and binding on parties, and where arbitrator determined that employee had been wrongfully discharged by employer, arbitrator's award of reinstatement with back pay less certain deductions including pay lost after expiration of contract was, notwithstanding fact that collective bargaining contract had by its terms expired, enforceable as constituting arbitrator's construction of contract, and courts could not overrule him because their interpretation of contract was different.

Judgment of Court of Appeals reversed except for modification and case remanded to District Court for proceedings in conformity with opinion.

Mr. Justice Whittaker dissented.

For concurring opinion see 80 S.Ct. 1363.

West Headnotes

**[1] Labor and Employment 231H ⬥1621**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)5 Judicial Review and Enforcement
                231Hk1618 Scope of Inquiry
                    231Hk1621 k. Merits of Award.
Most Cited Cases
    (Formerly 232Ak483 Labor Relations)
Refusal of courts to review merits of arbitration award is proper approach to arbitration under collective bargaining agreements.

**[2] Labor and Employment 231H ⬥1580**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)4 Proceedings
                231Hk1577 Authority of Arbitrators
                    231Hk1580 k. Interpretation of
Collective Bargaining Agreement in General. Most Cited Cases
    (Formerly 232Ak454 Labor Relations)
An arbitrator is confined to interpretation and application of collective bargaining agreement providing for arbitration of grievances and he does not sit to dispense his own brand of industrial justice, and while he may look for guidance from many sources his award is legitimate only so long as he draws its essence from the collective bargaining agreement.

**[3] Labor and Employment 231H ⬥1623(1)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)5 Judicial Review and Enforcement

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

80 S.Ct. 1358

363 U.S. 593, 80 S.Ct. 1358, 46 L.R.R.M. (BNA) 2423, 4 L.Ed.2d 1424, 40 Lab.Cas. P 66,630
**(Cite as: 363 U.S. 593, 80 S.Ct. 1358)**

Page 2

231Hk1618 Scope of Inquiry
231Hk1623 Interpretation of Collective Bargaining Agreement
231Hk1623(1) k. In General.
Most Cited Cases
(Formerly 232Ak478 Labor Relations)
Where arbitrator's decision in making award under collective bargaining agreement providing for arbitration of grievances manifests an infidelity to his obligation to look to collective bargaining agreement for the essence of award, courts have no choice but to refuse enforcement of the award.

**[4] T ⊂⇒316**

25T Alternative Dispute Resolution
25TII Arbitration
25TII(G) Award
25Tk316 k. Actions Exceeding Arbitrator's Authority. Most Cited Cases
(Formerly 33k52.5, 33k57 Arbitration)
Mere ambiguity in opinion accompanying an arbitration award which permits inference that arbitrator may have exceeded his authority is no reason for refusing to enforce award.

**[5] T ⊂⇒307**

25T Alternative Dispute Resolution
25TII Arbitration
25TII(G) Award
25Tk302 Making and Formal Requisites
25Tk307 k. Findings, Conclusions, and Reasons for Decision. Most Cited Cases
(Formerly 33k52.5, 33k52 Arbitration)
Arbitrators have no obligation to court to give reasons for an award.

**[6] Labor and Employment 231H ⊂⇒1595(12)**

231H Labor and Employment
231HXII Labor Relations
231HXII(H) Alternative Dispute Resolution
231HXII(H)4 Proceedings
231Hk1590 Award
231Hk1595 Particular Awards in

General
231Hk1595(12) k. Reinstatement. Most Cited Cases
(Formerly 232Ak478 Labor Relations)

**Labor and Employment 231H ⊂⇒1595(15)**

231H Labor and Employment
231HXII Labor Relations
231HXII(H) Alternative Dispute Resolution
231HXII(H)4 Proceedings
231Hk1590 Award
231Hk1595 Particular Awards in
General
231Hk1595(15) k. Damages;
Back Pay. Most Cited Cases
(Formerly 232Ak478 Labor Relations)
Where collective bargaining agreement provided for arbitration of grievances and stated that arbitrator's decision should be final and binding on the parties, and agreement also provided that if an employee shall have been suspended unjustly employer shall be required to reinstate such employee with full compensation for time lost, and where arbitrator determined that employer had unjustly suspended employee, arbitrator's award requiring reinstatement and payment for lost compensation, less certain deductions, but including back pay subsequent to termination of agreement, was enforceable even though collective bargaining agreement had by its terms expired, since it was not apparent that arbitrator had gone beyond submission, and court could not overrule his decision because its interpretation of contract was different.

**[7] Labor and Employment 231H ⊂⇒1623(1)**

231H Labor and Employment
231HXII Labor Relations
231HXII(H) Alternative Dispute Resolution
231HXII(H)5 Judicial Review and Enforcement
231Hk1618 Scope of Inquiry
231Hk1623 Interpretation of Collective Bargaining Agreement
231Hk1623(1) k. In General.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000058

363 U.S. 593, 80 S.Ct. 1358, 46 L.R.R.M. (BNA) 2423, 4 L.Ed.2d 1424, 40 Lab.Cas. P 66,630
**(Cite as: 363 U.S. 593, 80 S.Ct. 1358)**

Most Cited Cases
  (Formerly 232Ak483 Labor Relations)
Question of interpretation of collective bargaining agreement providing for arbitration of grievances is a question for the arbitrator, and in so far as arbitrator's decision concerns construction of contract courts may not overrule merely because their interpretation of contract is different from his.

**Labor and Employment 231H €═⇒1556(3)**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(H) Alternative Dispute Resolution
            231HXII(H)3 Arbitration Agreements
                231Hk1552 Enforcement of Agreement to Arbitrate
                231Hk1556 Proceedings
                    231Hk1556(3) k. Scope of Inquiry; Merits of Controversy. Most Cited Cases
    (Formerly 232Ak436 Labor Relations)
Merits of a controversy may not be inquired into under guise of determining arbitrability under bargaining agreement.
**\*594 \*\*1359** Mr. Elliott Bredhoff and David E. Feller, Washington, D.C., for petitioner.

Mr. William C. Beatty, Huntington, W.Va., for respondent.

Opinion of the Court by Mr. Justice DOUGLAS, announced by Mr. Justice BRENNAN.

Petitioner union and respondent during the period relevant here had a collective bargaining agreement which provided that any differences 'as to the meaning and application' of the agreement should be submitted to arbitration and that the arbitrator's decision 'shall be final and binding on the parties.' Special provisions were included concerning the suspension and discharge of employees. The agreement stated:

'Should it be determined by the Company or by an arbitrator in accordance with the grievance procedure that the employee has been suspended unjustly

or discharged in violation of the provisions of this Agreement, the Company shall reinstate the employee and pay full compensation at the employee's regular rate of pay for the time lost.'

**\*\*1360 \*595** The agreement also provided:
'* * * It is understood and agreed that neither party will institute civil suits or legal proceedings against the other for alleged violation of any of the provisions of this labor contract; instead all disputes will be settled in the manner outlined in this Article III-Adjustment of Grievances.'

A group of employees left their jobs in protest against the discharge of one employee. A union official advised them at once to return to work. An official of respondent at their request gave them permission and then rescinded it. The next day they were told they did not have a job any more 'until this thing was settled one way or the other.'

A grievance was filed; and when respondent finally refused to arbitrate, this suit was brought for specific enforcement of the arbitration provisions of the agreement. The District Court ordered arbitration. The arbitrator found that the discharge of the men was not justified, though their conduct, he said, was improper. In his view the facts warranted at most a suspension of the men for 10 days each. After their discharge and before the arbitration award the collective bargaining agreement had expired. The union, however, continued to represent the workers at the plant. The arbitrator rejected the contention that expiration of the agreement barred reinstatement of the employees. He held that the provision of the agreement above quoted imposed an unconditional obligation on the employer. He awarded reinstatement with back pay, minus pay for a 10-day suspension and such sums as these employees received from other employment.

Respondent refused to comply with the award. Petitioner moved the District Court for enforcement. The District Court directed respondent to comply. 168 F.Supp. 308. The Court of Appeals, while agreeing that **\*596** the District Court had jurisdic-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000059

80 S.Ct. 1358

363 U.S. 593, 80 S.Ct. 1358, 46 L.R.R.M. (BNA) 2423, 4 L.Ed.2d 1424, 40 Lab.Cas. P 66,630
(Cite as: 363 U.S. 593, 80 S.Ct. 1358)

Page 4

tion to enforce an arbitration award under a collective bargaining agreement,[FN1] held that the failure of the award to specify the amounts to be deducted from the back pay rendered the award unenforceable. That defect, it agreed, could be remedied by requiring the parties to complete the arbitration. It went on to hold, however, that an award for back pay subsequent to the date of termination of the collective bargaining agreement could not be enforced. It also held that the requirement for reinstatement of the discharged employees was likewise unenforceable because the collective bargaining agreement had expired. 269 F.2d 327. We granted certiorari. 361 U.S. 929, 80 S.Ct. 371.

> FN1. See Textile Workers v. Cone Mills Corp., 4 Cir., 268 F.2d 920.

[1] The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. As we stated in united Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, the arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process. They sit to settle disputes at the plant level-disputes that require for their solution knowledge of the custom and practices of a particular factory or of a particular industry as reflected in particular agreements.[FN2]

> FN2. 'Persons unfamiliar with mills and factories-farmers or professors, for example-often remark upon visiting them that they seem like another world. This is particularly true if, as in the steel industry, both tradition and technology have strongly and uniquely molded the ways men think and act when at work. The newly hired employee, the 'green hand,' is gradually initiated into what amounts to a miniature society. There he finds himself in a strange environment that assaults his senses with unusual sounds and smells and often with different 'weather conditions' such as sudden drafts of heat, cold, or humidity. He discovers that the society of which he only gradually becomes a part has of course a formal government of its own-the rules which management and the union have laid down-but that it also differs from or parallels the world outside in social classes, folklore, ritual, and traditions.

> 'Under the process in the old mills a very real 'miniature society' had grown up, and in important ways the technological revolution described in this case history shattered it. But a new society or work community was born immediately, though for a long time it developed slowly. As the old society was strongly molded by the discontinuous process of making pipe, so was the new one molded by the continuous process and strongly influenced by the characteristics of new highspeed automatic equipment.'Walker, Life in the Automatic Factory, 36 Harv.Bus.Rev. 111, 117.

**1361 *597 [2][3] When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse en-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

80 S.Ct. 1358

363 U.S. 593, 80 S.Ct. 1358, 46 L.R.R.M. (BNA) 2423, 4 L.Ed.2d 1424, 40 Lab.Cas. P 66,630
(Cite as: 363 U.S. 593, 80 S.Ct. 1358)

Page 5

forcement of the award.

[4][5][6] The opinion of the arbitrator in this case, as it bears upon the award of back pay beyond the date of the agreement's expiration and reinstatement, is ambiguous. It may be read as based solely upon the arbitrator's view of the requirements of enacted legislation, which would mean that he exceeded the scope of the submission. Or it may *598 be read as embodying a construction of the agreement itself, perhaps with the arbitrator looking to 'the law' for help in determining the sense of the agreement. A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions[FN3] free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement. Moreover, we see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration. It is not apparent that he went beyond the submission. The Court of Appeals' opinion refusing to enforce the reinstatement and partial back pay portions of the award was not based upon any finding that the arbitrator did not premise his award on his construction of the contract. It merely disagreed with the arbitrator's construction of it.

> FN3. See Jalet, Judicial Review of Arbitration: The Judicial Attitude, 45 Cornell L.Q. 519, 522.

[7] The collective bargaining agreement could have provided that if any of the employees were wrongfully discharged, the remedy would be reinstatement and back pay up to the date they were returned to work. Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining

agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator's decision was not based upon the contract. The acceptance of this view would require **1362 courts, even under the standard arbitration clause, to review the merits of every *599 construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. This underlines the fundamental error which we have alluded to in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343. As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

We agree with the Court of Appeals that the judgment of the District Court should be modified so that the amounts due the employees may be definitely determined by arbitration. In all other respects we think the judgment of the District Court should be affirmed. Accordingly, we reverse the judgment of the Court of Appeals, except for that modification, and remand the case to the District Court for proceedings in conformity with this opinion. It is so ordered.

Judgment of Court of Appeals, except for its modification of District Court's judgment, reversed and case remanded to District Court with directions.

Mr. Justice FRANKFURTER concurs in the result.
Mr. Justice BLACK took no part in the consideration or decision of this case.
For opinion of Mr. Justice BRENNAN, joined by Mr. Justice FRANKFURTER and Mr. Justice HARLAN, see 363 U.S. 569, 80 S.Ct. 1363.
Mr. Justice WHITTAKER, dissenting.
Claiming that the employer's discharge on January 18, 1957, of 11 employees violated the provisions

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

of its collective bargaining contract with the employer-covering the period beginning April 5, 1956, and ending April 4, *600 1957-the union sought and obtained arbitration, under the provisions of the contract, of the issues whether these employees had been discharged in violation of the agreement and, if so, should be ordered reinstated and awarded wages from the time of their wrongful discharge. In August 1957, more than four months after the collective agreement had expired, these issues, by agreement of the parties, were submitted to a single arbitrator, and a hearing was held before him on January 3, 1958. On April 10, 1958, the arbitrator made his award, finding that the 11 employees had been discharged in violation of the agreement and ordering their reinstatement with back pay at their regular rates from a time 10 days after their discharge to the time of reinstatement. Over the employer's objection that the collective agreement and the submission under it did not authorize nor empower the arbitrator to award reinstatement or wages for any period after the date of expiration of the contract (April 4, 1957), the District Court ordered enforcement of the award. The Court of Appeals modified the judgment by eliminating the requirement that the employer reinstate the employees and pay them wages for the period after expiration of the collective agreement, and affirmed it in all other respects, 269 F.2d 327, and we granted certiorari, 361 U.S. 929, 80 S.Ct. 371, 4 L.Ed.2d 352.

That the propriety of the discharges, under the collective agreement, was arbitrable under the provisions of that agreement, even after its expiration, is not in issue. Nor is there any issue here as to the power of the arbitrator to award reinstatement status and back pay to the discharged employees to the date of expiration of the collective agreement. It is conceded, too, that the collective agreement expired by its terms on **1363 April 4, 1957, and was never extended or renewed.

The sole question here is whether the arbitrator exceeded the submission and his powers in awarding

*601 reinstatement and back pay for any period after expiration of the collective agreements. Like the Court of Appeals, I think he did. I find nothing in the collective agreement that purports to so authorize. Nor does the Court point to anything in the agreement that purports to do so. Indeed, the union does not contend that there is any such covenant in the contract. Doubtless all rights that accrued to the employees under the collective agreement during its term, and that were made arbitrable by its provisions, could be awarded to them by the arbitrator, even though the period of the agreement had ended. But surely no rights accrued to the employees under the agreement after it had expired. Save for the provisions of the collective agreement, and in the absence, as here, of any applicable rule of law or contrary covenant between the employer and the employees, the employer had the legal right to discharge the employees at will. The collective agreement, however, protected them against discharge, for specified reasons, during its continuation. But when that agreement expired, it did not continue to afford rights in futuro to the employees-as though still effective and governing. After the agreement expired, the employment status of these 11 employees was terminable at the will of the employer, as the Court of Appeals quite properly held, 269 F.2d, at page 331, and see Meadows v. Radio Industries, 7 Cir., 222 F.2d 347, 349; Atchison, T. & S.F.R. Co. v. Andrews, 10 Cir., 211 F.2d 264, 265; Warden v. Hinds, 4 Cir., 163 F. 201, 25 L.R.A., N.S., 529, and the announced discharge of these 11 employees then became lawfully effective.

Once the contract expired, no rights continued to accrue under it to the employees. Thereafter they had no contractual right to demand that the employer continue to employ them, and a fortiori the arbitrator did not have power to order the employer to do so; nor did the arbitrator have power to order the employer to pay wages to *602 them after the date of termination of the contract, which was also the effective date of their discharges.

The judgment of the Court of Appeals, affirming so

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000062

80 S.Ct. 1358
363 U.S. 593, 80 S.Ct. 1358, 46 L.R.R.M. (BNA) 2423, 4 L.Ed.2d 1424, 40 Lab.Cas. P 66,630
(Cite as: 363 U.S. 593, 80 S.Ct. 1358)

Page 7

much of the award as required reinstatement of the 11 employees to employment status and payment of their wages until expiration of the contract, but not thereafter, seems to me to be indubitably correct, and I would affirm it.

U.S. 1960.
United Steelworkers of America v. Enterprise Wheel & Car Corp.
363 U.S. 593, 80 S.Ct. 1358, 46 L.R.R.M. (BNA) 2423, 4 L.Ed.2d 1424, 40 Lab.Cas. P 66,630

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000063

674 N.E.2d 393
110 Ohio App.3d 328, 674 N.E.2d 393
**(Cite as: 110 Ohio App.3d 328, 674 N.E.2d 393)**

Page 1

**c**

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

SERVICE EMPLOYEES INTERNATIONAL UNI-
ON, LOCAL 47, Appellee,
v.
CLEVELAND NEIGHBORHOOD HEALTH SER-
VICES, INC., Appellant.
**No. 69388.**

Decided April 8, 1996.

Union filed petition to compel arbitration of wheth-
er temporary employee was entitled to union scale
wages. The Court of Common Pleas, Cuyahoga
County, entered summary judgment for union. Em-
ployer appealed. The Court of Appeals, Porter, J.,
held that employer and union did not agree in col-
lective bargaining agreement (CBA) to arbitrate
compensation of temporary employees.

Reversed and remanded.

West Headnotes

**[1] Judgment 228 ⟻185(2)**

228 Judgment
  228V On Motion or Summary Proceeding
    228k182 Motion or Other Application
      228k185 Evidence in General
        228k185(2) k. Presumptions and Bur-
den of Proof. Most Cited Cases
Summary judgment nonmovant may not rest upon
mere allegations or denials of his or her pleadings,
but must set forth specific facts showing there is
genuine issue for trial. Rules Civ.Proc., Rule 56(E).

**[2] Appeal and Error 30 ⟻893(1)**

30 Appeal and Error
  30XVI Review
    30XVI(F) Trial De Novo

      30k892 Trial De Novo
        30k893 Cases Triable in Appellate
Court
          30k893(1) k. In General. Most
Cited Cases
Court of Appeals reviews lower court's granting of
summary judgment de novo. Rules Civ.Proc., Rule
56.

**[3] Appeal and Error 30 ⟻934(1)**

30 Appeal and Error
  30XVI Review
    30XVI(G) Presumptions
      30k934 Judgment
        30k934(1) k. In General. Most Cited
Cases
Court reviewing grant of summary judgment evalu-
ates record in light most favorable to nonmoving
party. Rules Civ.Proc., Rule 56(C).

**[4] Judgment 228 ⟻181(2)**

228 Judgment
  228V On Motion or Summary Proceeding
    228k181 Grounds for Summary Judgment
      228k181(2) k. Absence of Issue of Fact.
Most Cited Cases
Motion for summary judgment must be overruled if
reasonable minds could find for party opposing mo-
tion. Rules Civ.Proc., Rule 56(C).

**[5] Labor and Employment 231H ⟻1547**

231H Labor and Employment
  231HXII Labor Relations
    231HXII(H) Alternative Dispute Resolution
      231HXII(H)3 Arbitration Agreements
        231Hk1543 Construction and Opera-
tion
          231Hk1547 k. Parties; Successor
Employers. Most Cited Cases
  (Formerly 232Ak433.2 Labor Relations)
Employer and union did not agree in their collect-
ive bargaining agreement (CBA) to arbitrate com-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000064

674 N.E.2d 393

110 Ohio App.3d 328, 674 N.E.2d 393

**(Cite as: 110 Ohio App.3d 328, 674 N.E.2d 393)**

Page 2

pensation of temporary employees; CBA expressly excluded temporary workers from being "employee" to whom arbitration clause applied.

**[6] Labor and Employment 231H ⬤⇁1549(1)**

231H Labor and Employment
   231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
        231HXII(H)3 Arbitration Agreements
          231Hk1543 Construction and Operation
            231Hk1549 Matters Subject to Arbitration Under Agreement
              231Hk1549(1) k. In General.
Most Cited Cases
   (Formerly 232Ak434.1 Labor Relations)

**Labor and Employment 231H ⬤⇁1549(4)**

231H Labor and Employment
   231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
        231HXII(H)3 Arbitration Agreements
          231Hk1543 Construction and Operation
            231Hk1549 Matters Subject to Arbitration Under Agreement
              231Hk1549(4) k. Arbitrability.
Most Cited Cases
   (Formerly 232Ak434.1 Labor Relations)
Parties to collective bargaining agreement (CBA) may agree that arbitrability of disputes may be submitted to arbiter in first instance; but in absence of such provision, arbitrability of disputes is question of law that must be decided by courts, and it then becomes question of parties' intent under arbitration agreement.

**[7] Labor and Employment 231H ⬤⇁1549(4)**

231H Labor and Employment
   231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
        231HXII(H)3 Arbitration Agreements
          231Hk1543 Construction and Opera-

tion
            231Hk1549 Matters Subject to Arbitration Under Agreement
              231Hk1549(4) k. Arbitrability.
Most Cited Cases
   (Formerly 232Ak434.1 Labor Relations)
Where labor arbitration agreement did not call for issue of arbitrability to be determined by arbitrator, the issue was properly left for trial court to decide.

**[8] Labor and Employment 231H ⬤⇁1549(2)**

231H Labor and Employment
   231HXII Labor Relations
      231HXII(H) Alternative Dispute Resolution
        231HXII(H)3 Arbitration Agreements
          231Hk1543 Construction and Operation
            231Hk1549 Matters Subject to Arbitration Under Agreement
              231Hk1549(2) k. Arbitration Favored; Presumption of Arbitrability. Most Cited Cases
   (Formerly 232Ak415 Labor Relations)
While strong presumption exists in favor of arbitrability under arbitration clause in collective bargaining agreement (CBA), party cannot be compelled to arbitrate dispute which is not part of arbitration agreement.

**394** Gregory J. Lavelle, Cleveland, for appellee.

Nicola, Gudbranson & Cooper and Matthew T. Fitzsimmons, Cleveland, for appellant.

**330** PORTER, Judge.

Respondent-appellant Cleveland Neighborhood Health Services, Inc. appeals from a summary judgment entered in favor of Service Employees International Union, Local 47, holding that the claim of employee Toronto Davis for union scale wages while he was a temporary employee was arbitrable pursuant to the collective bargaining agreement between the parties. We find merit in the appeal and remand the cause for entry of summary judg-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000065

674 N.E.2d 393
110 Ohio App.3d 328, 674 N.E.2d 393

Page 3

**(Cite as: 110 Ohio App.3d 328, 674 N.E.2d 393)**

ment in favor of the appellant.

Health Services is a nonprofit charitable corporation under Ohio law which provides primary medical and dental care to welfare recipients in the Cleveland area through the operation of Hough-Norwood Clinics. Local 47 represents the bargaining unit employees at Health Services pursuant to a collective bargaining agreement which provides a grievance and arbitration procedure for employment disputes.

In late 1990 and early 1991, Toronto Davis was unemployed. He sought a bargaining unit position as a receiving and distribution clerk at Health Services. There was no opening in bargaining unit positions for a receiving and distribution clerk at Health Services at that time. Nevertheless, he was hired in a nonbargaining unit position as a temporary, nonunion worker doing demolition work, cleanup, and general handyman work at the East 55th Street clinic, which was undergoing construction and renovation. Davis's wages ($6.50 per hour) were paid by Community Housekeeping Corporation, a corporation separate and distinct from **395 Health Services, which had no collective bargaining agreement with Local 47. Davis was considered a temporary employee on loan from Community Housekeeping Corporation to Health Services for the duration of the construction project. Davis came to work for Health Services with the hope and expectation that he would be considered for a higher paying bargaining unit position when one opened up.

From January 31, 1991 until February 15, 1993, Davis was not a full-time employee of Health Services, was not employed as a bargaining unit receiving and distribution clerk, and was not a member of Local 47.

On February 15, 1993, Davis became a full-time employee as a receiving and distribution clerk and joined Local 47. Davis did not apply for the receiving and distribution clerk position until December 1992.

On December 7, 1993, Davis filed a grievance alleging that he was owed union scale wages for the period from January 31, 1991 through February 15, 1993 when he was a temporary employee. Subsequently, on April 24, 1994, a demand for arbitration under the collective bargaining agreement was made by Local 47. Health Services refused to submit to grievance procedures or arbitrate Davis's *331 claim because, during the period between January 31, 1991 and February 15, 1993, Davis was a temporary employee, not represented by Local 47, and was not covered by the collective bargaining agreement and its arbitration procedure. Article I, Recognition, Section 2 of the collective bargaining agreement provided:

"Hereinafter, the term 'employee' will include all of those employees within the bargaining unit represented by the Union as a result of the Specification of this Article. The term 'employee' shall not include those employees excluded from the bargaining unit, part-time employees regularly scheduled to work twenty (20) hours per week or less and temporary employees."

Local 47 filed a complaint/petition to compel arbitration (R.C. 2711.03) in the court of common pleas concerning Davis's compensation and benefits between January 31, 1991 and February 15, 1993. The parties filed cross-motions for summary judgment. An evidentiary hearing was held on the motions on June 13, 1995, at which testimony and exhibits were presented.

In addition to the facts previously noted, Davis testified that he did not have a valid Ohio driver's license until late 1992 due to a DUI suspension. A valid Ohio driver's license was a requirement for the receiving and distribution clerk job.

On July 6, 1995, the trial court granted Local 47's motion for summary judgment, denied Health Services' motion and ordered the matter to arbitration.

This timely appeal ensued.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

We will address appellant's assignments of error together as they are both related to whether the court determined the issues to be arbitrable:

"I. The trial court committed reversible error, as a matter of law and to the substantial prejudice of Cleveland Neighborhood Health Services, Inc. ('Health Services'), by holding that the grievance and arbitration procedure of the collective bargaining agreement between Health Services and the union applied to a retroactive claim for compensation of an indisputably temporary employee, whom the collective bargaining agreement expressly did not cover but rather excluded, and by ordering that this dispute be submitted to arbitration.

"II. Because it arrived at the erroneous legal conclusion on the threshold question of the arbitrability of this dispute, the trial court erred, as a matter of law and to the substantial prejudice of Health Services, by granting the union's motion for summary judgment, and ordering that a dispute expressly excluded from the scope of the collective bargaining agreement must be arbitrated under the arbitration procedure of a legally inapplicable collective bargaining agreement."

Respondent contends the trial court erred as a matter of law in granting summary judgment in favor of petitioner on his petition to compel arbitration.

*332 Under Civ.R. 56, summary judgment is proper when:

**396 "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379-1380; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801-802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138, 139-141.

[1] However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra,* at 322-323, 106 S.Ct. at 2552-2553, 91 L.Ed.2d at 273-274. In accordance with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc., Inc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

[2][3][4] This court reviews the lower court's granting of summary judgment *de novo. Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("[W]e review the judgment independently and without deference to the trial court's determination"). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "[T]he reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

[5][6] The fundamental issue on this appeal is whether the parties, Health Services and Local 47, agreed in their collective bargaining agreement to arbitrate disputes relating to compensation for temporary employees such as Davis. The parties may of course agree that the arbitrability of disputes

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

may be submitted to the arbiter in the first instance. But in the absence of such a provision, arbitrability of disputes is a question of law that must be decided by *333 the courts. *Park-Ohio Industries, Inc. v. Atwood Resources* (Feb. 15, 1990), Cuyahoga App. No. 58142, unreported, 1990 WL 14133. It then becomes a question as what was the intent of the parties under the arbitration agreement. See *Ervin v. Am. Funding Corp.* (1993), 89 Ohio App.3d 519, 521, 625 N.E.2d 635, 637 ("The issue of whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide upon an examination of the contract"); *Divine Constr. Co., Inc. v. Ohio-American Water Co.* (1991), 75 Ohio App.3d 311, 316, 599 N.E.2d 388, 391 ("[A] party cannot be compelled to arbitrate any dispute which he has not agreed to submit to arbitration. * * * The scope of an arbitration clause, that is whether a controversy is arbitrable under the provisions of a contract, is a question for the court to decide upon examination of the contract").

In an analysis of the relevant question of arbitrability in the labor-management context, the Supreme Court held:

" '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' * * *

"[T]he question of arbitrability-whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance-is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to **397 arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648-649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655-656, citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409. And even more recently: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea

[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. 938, ----, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 990.

The pertinent arbitration provision at issue here states:

"ARTICLE V

"GRIEVANCE AND ARBITRATION PROCEDURE

"A formal grievance procedure has been established to provide a means for employees to bring problems and complaints concerning their well-being at work to the attention of management. Day-to-day problems shall normally be adjusted between an employee and his immediate supervisor on an informal basis.

"Section 1. A grievance is defined as any dispute between an employee and the Employer concerning the meaning, interpretation or application of the expressed terms and provisions of this agreement which cannot be settled informally."

*334 A four-step grievance procedure was provided for with the ultimate process resulting in reference to arbitration. Article V, Section 3 concludes:

"The arbitrator at all times shall be governed wholly by the expressed terms of this Agreement in reaching his decision and shall have no power or authority to modify or change this Agreement in any respect or to add or subtract from its terms. The decision of the arbitrator shall be final and binding on the Employer, the Union and the employee."

[7][8] The arbitration agreement at hand does not call for the issue of arbitrability to be determined by the arbitrator; therefore, the issue is properly left for the trial court to decide. *Cleveland Police Patrolmen's Assn. v. Cleveland* (1994), 95 Ohio App.3d 645, 651, 643 N.E.2d 559, 563; *Springfield Local Assn. of Classroom Teachers v. Springfield Local School Dist. Bd. of Edn.* (1987), 37 Ohio

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000068

App.3d 167, 168, 525 N.E.2d 27, 28-29; *Vulcan-Cincinnati, Inc. v. United Steelworkers of Am.* (1960), 113 Ohio App. 360, 366, 17 O.O.2d 386, 390, 173 N.E.2d 709, 712-713. While there is a strong presumption in favor of arbitrability, a party cannot be compelled to arbitrate a dispute which is not part of an arbitration agreement. *Stocker v. Castle Inspections, Inc.* (1995), 99 Ohio App.3d 735, 737, 651 N.E.2d 1052, 1053; *Gibbons-Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 517 N.E.2d 559.

All the witnesses at the evidentiary hearing conceded that Davis was hired and classified as a temporary employee at all times up until February 15, 1993, when he took a bargaining unit position and became a member of Local 47. Davis argued that, although he was classified as a temporary worker, he did the work of a bargaining unit receiving and distribution clerk. Article I, Section 2 of the collective bargaining agreement, however, unambiguously excluded Davis as a temporary worker from the definition of an "employee" to whom the collective bargaining agreement-and its arbitration procedure-applied:

"Hereinafter, the term 'employee' will include all of those employees within the bargaining unit represented by the Union as a result of the Specification of this Article. The term 'employee' shall not include those employees excluded from the bargaining unit, part-time employees regularly scheduled to work twenty (20) hours per week or less and temporary employees."

As a temporary worker, Davis, under Article I, Section 2, was not defined as an "employee" within the bargaining unit represented by Local 47. In fact, he was expressly excluded. Davis's retroactive claim for additional compensation under the collective bargaining agreement covered a time period when he was a temporary employee, not a member of the collective bargaining unit and, thus, not subject to the arbitration procedure of the collective bargaining agreement.

**398 *335 The trial court's opinion noted that the union argued that the collective bargaining agreement limits the use of temporary employees to a ninety-day period. The provision to which the trial court referred states as follows:

"Section 5. When vacancies in the bargaining unit occur, or new jobs are created within the bargaining unit, the Employer shall post a notice of the opening or openings, stating the job classifications, a brief description of the work to be performed, the qualifications required to perform the job, the rate of pay and the time bidding will be closed. Such notice shall remain posted five (5) consecutive working days counting as the first such day the day following posting.

" * * *

"In order to provide continuity of service while filling a vacancy or a new job, the Employer reserves the right to fill openings and make transfers on a temporary basis, not to exceed ninety (90) calendar days, pending the selection of an employee for the job under these provisions."

Article XX, Section 5 applies to vacancies or new positions created within the bargaining unit. The ninety-day provision applies to workers placed into a bargaining unit position while the employer finds a permanent, unionized employee. This section does not apply to Davis. Davis was not hired to fill a vacancy or new position in the bargaining unit. He was hired as a nonunion demolition/handy man to be used solely on the construction project. The temporary cleanup position Davis filled was not a bargaining unit position described in the collective bargaining unit and his wages were not subject to the agreement. Davis's pay came from a grant given to Health Services to fund the remodeling of the OB/GYN unit of the 55th Street center. The ninety-day temporary worker clause had no application to the employment of Davis prior to February 15, 1993, at which time he acquired the bargaining unit position.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R000069

Therefore, since Davis was not an "employee" as defined by the collective bargaining agreement and was not a union member, his grievance was not covered by the arbitration clause and the parties were not obligated to arbitrate the issue.

Based on the foregoing discussion, we sustain the respondent's assignments of error.

The judgment is reversed and the cause is remanded for entry of summary judgment in favor of appellant Cleveland Neighborhood Health Services, Inc.

*Judgment reversed and cause remanded.*

SPELLACY, P.J., and BLACKMON, J., concur.
Ohio App. 8 Dist.,1996.
Service Emp. Internatl. Union, Local 47 v. Cleveland Neighborhood Health Serv., Inc.
110 Ohio App.3d 328, 674 N.E.2d 393

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



Decision of Arbitrator
In re DEPARTMENT OF VETERANS AFFAIRS
[Detroit, Mich.] and AMERICAN FEDERATION
OF GOVERNMENT EMPLOYEES, LOCAL 933
07/04867
FMCS Case No. 07/04867
March 14, 2008
Arbitrator: Marvin J. **Feldman,** selected by parties
through procedures of the
Federal Mediation and Conciliation Service

BNA Labor Relations Reporter Headnotes - LA

GRIEVANCES

[1] Waiver of objection

C100.0760

C24.351

Grievance is granted, even though there was evidence
that parties had loose relationship in regards to opera-
tion of grievance procedure, where employer did not
respond within 10 days of step two meeting, and col-
lective-bargaining agreement provides that grievance
"shall" be resolved in favor of grievant if employer
does not comply with step two time limits.

Appearances: For the employer--Roland L. Bessette,
regional counsel; Kathy Christian, attorney; Kathy
Osinski, chief, human resources; Nancy Keeney, su-
pervisor; Patricia Kelly, chief fiscal officer. For the
union--Robert D. Starkman, counsel; Benjamin
Mahan, local union president; Tanya Rodgers, stew-
ard.

WAIVER OF OBJECTION

**FELDMAN, Arbitrator.**

Statement of Facts

On December 26, 2006, the grievant received a pro-
posal of a ten-day suspension. The suspension was
based upon two charges, namely, that the grievant

was Absent Without Leave (AWOL) and that the
grievant was involved in Conduct Unbecoming a
Federal Employee. Thereafter, much discussion took
place and on March 6, 2007, the union filed a Step 2
grievance. That grievance was acknowledged by the
employer and a copy of that grievance was placed
into the record of this particular case.

Now it might be noted that the particular date of fil-
ing the Step 2 grievance was March 6, 2007. The
contract demands that the answer of the employer be
filed within ten days. The union acknowledges that
the employer had until March 16, 2007 to file an an-
swer. During the period prior to March 16, the chief
fiscal officer to whom the Step 2 answer was directed
was out of the building on employer business but
came back into the office on March 13, leaving three
days with which to act (under the ten day rule) to
obtain a settlement in this particular matter. Needless
to say, the employer did not formally respond in a
timely manner, according to the union evidence. The
employer stated the following to the union with re-
gard to this particular situation and that is found in an
April 2 letter in which the following is stated:

"3. On March 7, 2007, a 2nd step grievance was re-
ceived in Ms. Kelly's office regarding the disciplinary
action issued to B____. Ms. Kelly was off station on
travel and did not return to duty until March 13,
2007. On March 14, 2007, you met with Ms. Kelly
and requested that she reduce the suspension. She
told you she would not. You indicated to her that you
would return the next day to discuss the issue further.
Since you did not return on March 15, 2007 to meet
as you had indicated, Ms. Kelly contacted your office
on Monday, March 19, 2007 to schedule another
meeting regarding the 2nd step grievance. You were
not available and did not return her call. She again
attempted to contact you on March 20, 2007 but was
unsuccessful. In fact, you were not available to meet
at all during the week of March 19-23, 2007. During
our meeting, you did not indicate to me that you had
met with Ms. Kelly within the timeframe established
in the Master Agreement and had indicated to her that
you would meet again on March 15, 2007, to discuss
the issue further. Therefore, your 3rd step grievance
dated March 19, 2007, for Failure to Respond in a
Timely Manner has been denied as you did not com-

COPR. © 2009 The Bureau of National Affairs, Inc.

plete the discussion at the 2nd step as you led Ms. Kelly to believe would happen, nor did you give Ms. Kelly a chance to respond to the grievance at the 2nd step."

Thus, the employer rejects the timeliness argument of the union on the basis that the parties were involved in settlement negotiations and that the officer in charge of the settlement was out of the building for the period of seven of the ten days and further that discussions of settlement were underway.

The union has taken the view that the contract demands a timely answer and stated in their Step 3 grievance:

"As a resolution, see Article 42, Section 9-Failure to Respond in a Timely Manner. Should management fail to comply with the time limits at Step 1, the grievance may be advanced to Step 2. Should management fail to comply with the time limits for rendering a decision at Step 2 or Step 3, the grievance shall be resolved in favor of the grievant, provided that (1) receipt of the grievance had been acknowledged by management at the appropriate step in writing and (2) the remedy requested by the grievant is legal and reasonable under the circumstances of the grievance. The 10 day suspension must be vacated." (Emphasis ours)

Further, on April 5, 2007, a memo from the local union president to Michael Wheeler, the Director of the Veterans facility in Detroit, stated the following:

"Please note that pursuant to the Master Agreement, Section 9-Failure to Respond in Timely Manner it provides that "Should management fail to comply with the time limits at Step 1, the grievance may be advanced to Step 2. Should management fail to comply with the time limits for rendering a decision at Step 2 or Step 3, the grievance shall be resolved in favor of the grievant, provided that (1) receipt of the grievance had been acknowledged by management at the appropriate step in writing and (2) the remedy requested by the grievant is legal and reasonable under the circumstances of the grievance. The 2nd step Grievance should have been awarded in favor of the grievant."

It is noted at page 166 of the contract that the procedure for filing grievances and answers are reflected at

Section 7 of Article 42 found at Steps 1, 2, and 3. Those steps reveal the following:

" Step 1. An employee and/or the Union shall present the grievance to the immediate or acting supervisor with an information copy to the Director of the facility in writing within thirty (30) calendar days of the date that the employee or Union became aware or should have become aware of the act or occurrence or anytime if the act or occurrence is of a continuing nature. The immediate or acting supervisor will make every effort to resolve the grievance immediately but must meet with the employee/representative and provide a written answer within fourteen (14) calendar days of receipt of the grievance.

Step 2. If the grievance is not satisfactorily resolved at Step 1, it shall be presented to the Service/Division Chief, or equivalent management official or designee, in writing, within seven (7) calendar days of the Step 1 supervisor's decision. The grievance must state, in detail, the basis for the grievance and the corrective action desired. The Service/Division chief, or equivalent management official or designee, shall meet with the employee and their representative and provide a written answer within ten (10) calendar days.

Step 3. If no mutually satisfactory settlement is reached as a result of the second step, the aggrieved party or the Union shall submit the grievance to the Director, or designee, in writing, within seven (7) calendar days of receipt of the decision of Step 2. The Director or designee, will meet with the aggrieved employee and their representative within seven (7) calendar days to discuss the grievance. The Director or designee will render a written decision to the aggrieved party and the Union within ten (10) calendar days after the meeting."

The contract, at page 168, as was placed in the record, at Section 9, has a section entitled Failure to Respond in a Timely Manner. That Section relates the following:

" Section 9-Failure to Respond in Timely Manner

Should management fail to comply with the time limits at Step 1, the grievance may be advanced to Step 2. Should management fail to comply with the time limits for rendering a decision at Step 2 or Step 3, the grievance shall be resolved in favor of the

COPR. © 2009 The Bureau of National Affairs, Inc.

grievant, provided that (1) receipt of the grievance had been acknowledged by management at the appropriate step in writing and (2) the remedy requested by the grievant is legal and reasonable under the circumstances of the grievance." (Emphasis ours)

Thus, there is evidence in the record that, as a matter of fact, the employer had ten days to respond and did not formally do so. There is also evidence in the record that the parties had a loose relationship in this regard over a period of time and that the dialogue between the parties for the purpose of settlement should toll any formal limitation of filing that is mandated in the contract of collective bargaining. The allegation of loose procedures between the parties in that regard was placed into the evidence by the employer with the union not refuting any of the allegations of the employer in that regard. Thus, on one hand, we have a strict clause in the contract mandating a remedy for late answers and, on the other hand, there is evidence in the evidentiary presentation that the parties seldom followed the mandate of the cited contract clause.

There was much evidence placed in the record upon the substantive activity of the grievant in her response to the mandates of management, but the main issue of this particular matter, it appears to me, is the procedural aspect of the case and the due process due a grievant under the writings of the parties in the form of the collective bargaining agreement. It is upon all of this evidence concerning the procedure that this matter rose to arbitration for Opinion and Award.

Opinion and Discussion

[1] Section 9 of Article 42 found at page 168 of the agreement, and restated hereinabove, states in **clear**, concise, and **unambiguous** language, that the failure of management to comply with the time limits from Step 1 to Step 2 to Step 3 causes the grievance that was filed and not answered timely to be resolved in favor of the grievant. Management now seeks to establish a second rule, because of prior practice on occasion between the parties, and that rule to be contrary to the written words of the agreement as entered into at arm's length by and between the parties. Please note the mandatory language of "shall" in the cited clause.

It may well be that the grievant is guilty of inappropriate and substandard conduct in taking an additional period of time off and in pursuing union business at a picnic of the union while on sick leave but the due process created under the terms of the agreement must be respected in favor of the grievant. Simply put, the employer failed to follow the exact words of the contract and those words state that a failure to follow time limits causes a waiver of further activity on the part of management as to discipline in this particular matter. While arbitrators do not condone forfeiture, the fact remains that where the parties by and through their collective bargaining agreement have agreed to a course of conduct by the words revealed therein, that course of conduct cannot be diluted or waived by virtue of arbitral mandate. The contract says what it says and it must be respected. This arbitrator will not condone the creation of another clause overriding the written word or diluting the activity expected under the negotiated written word of the agreement. To do so would be to hold the parties' so.

The due process of the facts of this case reveal that the grievant's discipline shall be held for naught ... all for reasons stated.

AWARD

The grievance is granted in this matter and the employer is bound to pay the grievant her wage for the period denied under the terms of the discipline-invoked. It might be noted that this arbitrator does not condone the activity of the grievant in this matter but merely re-affirms the written word of the forfeiture under the terms of the contract, all as stated.

2008 WL 2067595 (Lab.Arb.), 124 Lab. Arb. (BNA) 1609, 124 LA (BNA) 1609

END OF DOCUMENT

COPR. © 2009 The Bureau of National Affairs, Inc.

486 N.E.2d 251
21 Ohio App.3d 90, 486 N.E.2d 251, 21 O.B.R. 95
**(Cite as: 21 Ohio App.3d 90, 486 N.E.2d 251)**

Page 1

**C**

Court of Appeals of Ohio, Eleventh District,
Geauga County.
DELLY et al., Appellees,
v.
LEHTONEN et al., Appellants.
No. 1170.

Dec. 10, 1984.

Parties who had contracted with contractors for construction of residence brought action against the contractors, based on subcontractor's improper installation of drain tile which resulted in water damage in basement. The Chardon Municipal Court, Geauga County, rendered judgment for homeowners, and contractors appealed. The Court of Appeals, Dahling, J., held that failure of subcontractor to properly install drain tile was responsibility of contractors, and they were liable for the poor workmanship of their subcontractor.

Affirmed.

West Headnotes

**[1] Contracts 95 ⟳177**

95 Contracts
    95II Construction and Operation
        95II(B) Parties
            95k177 k. Scope of Contractual Relation in General. Most Cited Cases
Failure of subcontractor to properly install drain tile in residence which was being constructed was responsibility of contractors, and they were liable to parties with whom they had contracted for construction of residence for poor workmanship of the subcontractor, where contract was with contractors, not with the subcontractor, and contractors chose the subcontractor.

**[2] Contracts 95 ⟳177**

95 Contracts
    95II Construction and Operation
        95II(B) Parties
            95k177 k. Scope of Contractual Relation in General. Most Cited Cases
No one can sue for breach of contract unless he is a party or derives rights from an original party.

***251 Syllabus by the Court*

*90 No one can sue for breach of contract unless he is a party or derives rights from an original party.
Robert and Carol Delly, pro se.

Kathleen D. West, Painesville, for appellant Matt Lehtonen.

Talikka, Ulrich, Keorner & Ischie and James P. Koerner, Painesville, for appellant J.W. Betteley Building Co.

DAHLING, Judge.

This is an appeal from a judgment of the Chardon Municipal Court, Geauga County, **252 in which after a trial to the court, judgment was rendered in the sum of $680 and costs.

Plaintiffs-appellees contracted with the defendants-appellants for construction of a residence. The appellants hired a subcontractor to install footer drain tile around the house. The drain tile was improperly installed resulting in water damage in the appellees' basement. The record reflects that the expense incurred in correcting this problem was $680. The court, after hearing the evidence, found the appellants liable on the contract.

The assignment of error is as follows:

"I. The trial court erred in finding J.W. Betteley Building Co. liable based upon its contract with Mr. and Mrs. Delly."

The assignment of error is without merit.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

The appellants contend that the court erred in finding for the appellees on the basis of "contract" principles rather than on "negligence" principles.

[1] It is clear that the parties had a contract to build a house. It was assumed that it would be constructed in a "workmanlike" fashion. The failure of the subcontractor to properly install the drain tile was the responsibility of the appellants.

The appellees' contract was with appellants, not with the subcontractor. The appellants are liable for the poor workmanship of their subcontractor. The appellants chose the subcontractor, not the appellees.

[2] 18 Ohio Jurisprudence 3d (1980) 67, Contracts, Section 173, states:

"In general, a contract binds, and confers rights on, only the parties thereto and persons in privity with them, and accordingly no one can sue for a breach of contract unless he is a party or derives rights from an original party. The contract itself determines the legal rights and liabilities of the parties and confers the legal right of recovery."

The judgment of the trial court is affirmed.

*Judgment affirmed.*

COOK, P.J., and FORD, J., concur.
Ohio App.,1984.
Delly v. Lehtonen
21 Ohio App.3d 90, 486 N.E.2d 251, 21 O.B.R. 95

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2004 WL 396335 (Ohio App. 8 Dist.), 2004 -Ohio- 1001
**(Cite as: 2004 WL 396335 (Ohio App. 8 Dist.))**

Page 1

**H**

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.
Serge O. RAMIREZ, Plaintiff-Appellee
v.
Barbara SHAGAWAT, et al., Defendants-Appellants.
**No. 83259.**

Decided March 4, 2004.

**Background:** Carpenter brought breach of contract action against co-owners of home where he performed work. The Parma Municipal Court, No. 02-CVI-3560, entered judgment in favor of carpenter, and co-owners appealed.

**Holdings:** The Court of Appeals, Colleen Conway Cooney, J., held that:
(1) affidavit of co-owner who had contracted with carpenter was sufficient to rebut presumption of service by ordinary mail;
(2) without proper service, trial court never obtained jurisdiction over co-owner; and
(3) other co-owner was an incidental beneficiary with no duties or obligations under contract between carpenter and first co-owner, such that carpenter had no cause of action for breach of contract against second co-owner.

Reversed and remanded.

West Headnotes

**[1] Process 313 ⛒145**

313 Process
    313II Service
        313II(E) Return and Proof of Service

313k144 Evidence as to Service
    313k145 k. Presumptions and Burden of Proof. Most Cited Cases
    (Formerly 313k149)
Homeowner's affidavit, stating that she did not reside at unoccupied home where carpenter performed work and that she never received a copy of carpenter's breach of contract complaint mailed to unoccupied home, was sufficient to rebut presumption of service by ordinary mail that arose from certificate of mailing that bore time stamp from the United States Postal Service confirming mailing, and fact that ordinary mail envelope was not returned to court. Rules Civ.Proc., Rule 4.6.

**[2] Process 313 ⛒48**

313 Process
    313II Service
        313II(A) Personal Service in General
            313k48 k. Nature and Necessity in General. Most Cited Cases
Without proper service, trial court never obtained jurisdiction over homeowner in breach of contract action brought against her by carpenter.

**[3] Process 313 ⛒145**

313 Process
    313II Service
        313II(E) Return and Proof of Service
            313k144 Evidence as to Service
                313k145 k. Presumptions and Burden of Proof. Most Cited Cases
Absent evidence rebutting presumption that co-owner of home was served by ordinary mail at her home, service of carpenter's breach of contract complaint was perfected on her, and court had jurisdiction over her. Rules Civ.Proc., Rule 4.6.

**[4] Contracts 95 ⛒187(1)**

95 Contracts
    95II Construction and Operation
        95II(B) Parties

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2004 WL 396335 (Ohio App. 8 Dist.), 2004 -Ohio- 1001
(Cite as: 2004 WL 396335 (Ohio App. 8 Dist.))

95k185 Rights Acquired by Third Persons
95k187 Agreement for Benefit of
Third Person
95k187(1) k. In General. Most
Cited Cases
Co-owner of house where carpenter performed
work was an incidental beneficiary with no duties
or obligations under contract between carpenter and
other co-owner, such that carpenter had no cause of
action for breach of contract against her; carpenter
admitted that he never had a contract with co-
owner, whose name did not appear on written con-
tract and who had no dealings with carpenter other
than delivering check to him.

Civil appeal from Parma Municipal Court, Case
No. 02-CVI-3560.Serge O. Ramirez, pro se, Bay
Village, OH, for plaintiff-appellee.

Mary E. Papcke, Parma, OH, for defendants-appel-
lants (Barbara Shagawat and Mary E. Papcke).

COLLEEN CONWAY COONEY, J.

*1 {¶ 1} Defendant-appellants Mary E. Papcke
("Papcke") and Barbara Shagawat ("Shagawat" or
collectively referred to as "appellants") appeal the
Parma Municipal Court's judgment against them,
claiming the court never had personal jurisdiction
over them. Appellants also argue that plaintiff-ap-
pellee Serge Ramirez ("Ramirez") did not have
privity of contract with Shagawat and, thus, had no
cause of action against her. We find merit to the ap-
peal and reverse and remand for further proceed-
ings.

{¶ 2} Papcke hired Ramirez to perform carpentry
work on a new home located at 12936 Huffman
Road, which was unoccupied and still under con-
struction. On November 14, 2002, Ramirez met
Papcke at the construction site, and they executed a
written contract whereby Papcke agreed to pay a
total of $1,555.65 for labor. Pursuant to this agree-
ment, Papcke agreed to pay Ramirez "by the job" as
opposed to by the hour. Later that day, Ramirez

called Papcke and requested reimbursement for ma-
terials he purchased and payment "up front" for
fifty percent of his labor. Papcke was unable to
meet Ramirez at the site, so Shagawat met him and
gave him a check for $1,053.23.

{¶ 3} As part of his work, Ramirez installed base-
ment molding, using mitered joints. Papcke com-
plained that she wanted a covered joint instead,
which necessitated Ramirez redoing the basement
molding. Ramirez redid the molding at Papcke's re-
quest, with additional labor and expense beyond the
original contract. Other than requesting that
Ramirez redo the basement molding, Papcke had no
other complaints about Ramirez's work as of
November 15, 2002.

{¶ 4} However, on the morning of November 16,
before Ramirez resumed work, Papcke instructed
him to cease all work on the property and advised
him that the check Shagawat had given him had
been canceled. Papcke paid him $630 to cover the
cost of materials and an amount which she con-
sidered fair compensation for the work done by
Ramirez. It is undisputed that Ramirez had not
completed all of the items listed in the original con-
tract.

{¶ 5} On December 2, 2002, Ramirez filed a com-
plaint for breach of contract against Papcke and
Shagawat in the Parma Municipal Court. The
clerk's office issued service on Papcke and
Shagawat by certified and regular mail. The com-
plaint was sent to Papcke at the address on Huff-
man Road, the home which was under construction
and unoccupied, and to Shagawat at 6331 Old Vir-
ginia Lane in Parma Heights, which was then
Shagawat's home address.

{¶ 6} The trial court's journal reflects that the at-
tempts at certified mail service upon both Papcke
and Shagawat were returned "unclaimed."
However, the court's journal also reflects that regu-
lar mail service to the parties was delivered, and not
returned to the court.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2004 WL 396335 (Ohio App. 8 Dist.), 2004 -Ohio- 1001
(Cite as: 2004 WL 396335 (Ohio App. 8 Dist.))

{¶ 7} The case proceeded to a hearing before a magistrate on January 6, 2003. Neither Papcke nor Shagawat appeared. Ramirez presented unrefuted evidence of his claim and the court entered judgment in his favor in the amount of $1,053.23. Papcke, who had moved into the house on Huffman Road on December 18, 2002, received the magistrate's decision at that address. On January 27, 2003, Papcke, an attorney, filed objections to the magistrate's decision on behalf of herself and Shagawat, and she also requested a transcript of the January 6 hearing.

*2 {¶ 8} In May 2003, the judge ruled on appellants' objections to the magistrate's decision, upholding one of the three objections and scheduling a rehearing. Ramirez and Papcke were both present for the rehearing on June 17, 2003. Papcke asserted on the record that her appearance in no way constituted a waiver of her defense of lack of service on both herself and Shagawat. The court then heard additional testimony and again entered judgment in favor of Ramirez, this time in the amount of $1,191.05.

{¶ 9} Papcke and Shagawat appeal, raising two assignments of error.

### Service

{¶ 10} In their first assignment of error, Papcke and Shagawat argue the trial court erred in proceeding with a hearing and entering judgment against them without first obtaining jurisdiction over them. Papcke argues she was never properly served because the complaint was mailed to the Huffman Road address, which was the unoccupied house where Ramirez was performing the work. Papcke asserts that because she did not reside there, she could not be served at that address. She also claims she never received a copy of the complaint.

{¶ 11} It is undisputed that the attempts to serve Papcke and Shagawat by certified mail failed because the certified mail envelopes were returned

"unclaimed." It is also undisputed that the Clerk of the Parma Municipal Court simultaneously issued service of the complaint to Papcke and Shagawat by ordinary mail. As previously stated, the complaint was sent to Papcke at the Huffman Road address, the unoccupied home under construction. The complaint was sent to Shagawat at 6331 Old Virginia Lane, which was then Shagawat's home address.

{¶ 12} A complaint is to be served at an address where there is a reasonable expectation that service will be accomplished. *United Home Fed. v. Rhonehouse* (1991), 76 Ohio App.3d 115, 124, 601 N.E.2d 138.Civ.R. 4.6(D), which governs service by ordinary mail, provides in pertinent part:

**"[T]he clerk shall send by ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in the written instructions furnished to the clerk. The mailing shall be evidenced by a certificate of mailing which shall be completed and filed by the clerk. Answer day shall be twenty-eight days after the date of mailing as evidenced by the certificate of mailing. The clerk shall endorse this answer date upon the summons which is sent by ordinary mail. *Service shall be deemed complete when the fact of mailing is entered of record, provided that the ordinary mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery.*"**

{¶ 13}*Id.*(Emphasis added.)

{¶ 14} A "certificate of mailing" must be a United States Postal Service confirmation of mailing. *Gen. Motors Acceptance Corp. v. Kollert* (1986), 33 Ohio App.3d 274, 275, 515 N.E.2d 959.Thus, service is " 'deemed complete' " under Civ.R. 4.6(D) when: (1) the "certificate of mailing," time-stamped by the United States Postal Service, is entered upon the record and (2) the ordinary mail envelope is not returned to the court with an endorsement showing failure of delivery. *Hayes v. Gradisher,* Summit

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2004 WL 396335 (Ohio App. 8 Dist.), 2004 -Ohio- 1001
(Cite as: 2004 WL 396335 (Ohio App. 8 Dist.))

App. No. 17791, 1996 Ohio App. LEXIS 4733, at *6.

**\*3 {¶ 15}** However, even when service is in compliance with the Civil Rules and, therefore, presumed to be complete, this presumption may be rebutted by sufficient evidence that service was not accomplished. *Carter v. Miles* (Feb. 3, 2000), Cuyahoga App. No. 76590;*Koziol v. Refe,* Geauga App. No. 93-G-1769, 1993 Ohio App. LEXIS 5925;*Talarek v. Miles,* Lorain App. No. 96CA006567, 1997 Ohio App. Lexis 3164, citing *Rafalski v. Oates* (1984), 17 Ohio App.3d 65, 66, 477 N.E.2d 1212.A party's affidavit, if unchallenged, is sufficient to overcome the presumption of service. *Carter,* supra.The trial court's determination of whether service by ordinary mail was completed will not be disturbed absent an abuse of discretion. *Talarek,* supra.

{¶ 16} In the instant case, the certificate of mailing bears the time stamp from the United States Postal Service confirming the fact of mailing, and the ordinary mail envelope was not returned to the court. Thus, Ramirez complied with Civ.R. 4.6 in his efforts to serve appellants, and the presumption of completed service attached.

**[1][2]{¶ 17}** However, Papcke submitted an affidavit with her objections to the magistrate's report, wherein she stated that she did not reside at the Huffman Road address at the time the complaint was mailed and that she never received a copy of the complaint. There is nothing in the record rebutting these facts. Although Ramirez could reasonably expect that service would be accomplished at the Huffman Road address, because it is undisputed that Papcke did not reside at that address and there is no evidence to refute her claim that she never received a copy of the complaint, the presumption of service by ordinary mail is rebutted. Without proper service, the court never obtained jurisdiction over Papcke.

**[3]{¶ 18}** However, because there is no evidence to rebut the presumption that Shagawat was served by ordinary mail at her home, the trial court properly found that service was perfected on her, and the court had jurisdiction over her.

{¶ 19} Accordingly, the first assignment of error is sustained as to Papcke and overruled as to Shagawat.

### Privity of Contract

**[4]{¶ 20}** In their second assignment of error, appellants argue the trial court erred in entering judgment against Shagawat because there was no privity of contract between Ramirez and Shagawat. Therefore, appellants argue, Ramirez has no cause of action against Shagawat for breach of contract.

**"In general, a contract binds, and confers rights on, only the parties thereto and persons in privity with them, and accordingly no one can sue for a breach of contract unless he is a party or derives rights from an original party. The contract itself determines the legal rights and liabilities of the parties and confers the legal right of recovery."**

{¶ 21}*Bischoff v. B & D Woodcrafters, Inc.,* Montgomery App. No. 11811, 1990 Ohio App. LEXIS 2016, citing *Delly v. Lehtonen* (1984), 21 Ohio App.3d 90, 486 N.E.2d 251.

**\*4 {¶ 22}** Where third parties are involved, the Ohio Supreme Court has explained that only intended third-party beneficiaries to a contract have enforceable rights under a contract. *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 521 N.E.2d 780.In determining whether a third party has enforceable rights under a contract, the *Hill* court explained the test is whether the promisee intended to benefit a third party. Specifically, the *Hill* court explained:

**" \* \* \* Under this analysis, if the promisee \* \* \* intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2004 WL 396335 (Ohio App. 8 Dist.), 2004 -Ohio- 1001
(Cite as: 2004 WL 396335 (Ohio App. 8 Dist.))

rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract.

* * [T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."

{¶ 23} *Id.,* quoting *Norfolk & Western Co. v. United States* (C.A.6, 1980), 641 F.2d 1201, 1208.

{¶ 24} In *Point East Condominium Owners' Assn. v. Cedar House Assoc.* (1995), 104 Ohio App.3d 704, 663 N.E.2d 343, this court held that in determining whether the promisee intended to benefit a third party, courts should look at the language of the contract. *Id.,* citing *Lin v. Gatehouse Constr. Co.* (1993), 84 Ohio App.3d 96, 102, 616 N.E.2d 519.

{¶ 25} Further, in *Brenner v. Curran-Nosker Drywall, Inc.,* Hamilton App. No. C-860447, 1987 Ohio App. LEXIS 7983, the court held that a contract did not exist between the plaintiff and third party simply because the defendant and third party were partners and joint owners.

{¶ 26} Here, although Shagawat and Papcke are co-owners of the house where Ramirez performed the carpentry work, Ramirez admitted during the rehearing that he never had a contract with Shagawat. Ramirez also admitted that Shagawat's name does not appear on the written contract and that he had no dealings with Shagawat other than receiving a check from her. It is clear from his testimony that, at the time he entered into the contract with Papcke, Ramirez did not know Shagawat was a co-owner of the house nor did he intend to benefit her by his work. Thus, Shagawat is an incidental beneficiary with no duties or obligations under the contract between Ramirez and Papcke. Therefore, Ramirez

had no cause of action for breach of contract against Shagawat.

{¶ 27} Accordingly, the second assignment of error is sustained.

{¶ 28} Judgment reversed and case remanded.

ANNE L. KILBANE, P.J., and ANTHONY O. CALABRESE, J., concur.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

*5 It is, therefore, considered that said appellants recover of said appellee the costs herein.

It is ordered that a special mandate be sent to the Parma Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).

Ohio App. 8 Dist.,2004.
Ramirez v. Shagawat
Not Reported in N.E.2d, 2004 WL 396335 (Ohio App. 8 Dist.), 2004 -Ohio- 1001

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.